James Linlor
PO Box 1812, Zephyr Cove, NV 89448
fax (206) 339-9072
Pro Se Plaintiff

John and Marcella Warner Holman (individual capacities)
Black Diamond Angus Ranch Partnership
Black Diamond Angus Ranch LLC
Warner Angus Ranch Morgans
10072 120 Rd Spearville KS 67876
10200 US Hwy 283, Wright, KS  67882
jholman@ksu.edu
(620) 385-2456, (620) 789-1257

Aaron Kite (individual capacity)
810 Frontview, Dodge City, KS  67801
620-371-5483
Ansel Kay Barngrover  (individual capacity)
11747 117th
Dodge City, KS 67801

Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

| | |
|---|---|
| James Linlor, pro se | ) Case Number:  6:24-cv-1001-DDC-GEB |
| | ) |
| Plaintiff, | ) **Initial Complaint** |
| | ) |
| vs. | ) **Demand for Jury Trial** |
| | ) |
| John and Marcella Warner Holman (individual capacities), | ) **Stay of  in rem Kansas state district case per 28 U.S.C. § 2283, 28 U.S.C. § 1446, and 28 U.S.C. § 1331 and 1332.** |
| Black Diamond Angus Ranch Partnership, Black Diamond Angus Ranch LLC, Warner Angus Ranch Morgans | ) |
| | ) **Breach of Contract, Unfair Competition, Tortious Interference, Malicious prosecution, Infliction of Emotional Distress, Economic and Non-economic damages, etc.** |
| Aaron Kite, Ansel Kay  Barngrover (both individually) | ) |
| | ) |
| Defendant(s) | ) |

SUMMARY

a)  Come now, airline Capt. James Linlor *in pro per*, for relief from multiple torts committed by Defendants as part of tortious interference and bad faith, etc., (as named below) related to breach of contract, conversion, and emotional distress from blocking of Plaintiff's sale of pasture real estate land located in Ford County, Kansas.

b)  Plaintiff Capt. Linlor seeks injunctive relief (not yet considered at-bar by the State Court) to permit unclouded title of land in Ford County of the **currently and on-going blocked land sale** that has been blocked for over a year, and other relief as detailed below.  Such relief warrants and requires a STAY of *in rem* State proceedings pending their removal to this federal District Court, authorized under 28 U.S.C. § 2283 as necessary in aid of federal jurisdiction since removal to Wichita federal court is currently pending and may even be joined with this instant case, and to protect or effectuate its future judgments, with removal authorized under 28 U.S.C. § 1446, for jurisdiction under 28 U.S.C. § 1331 and 1332, and 28 U.S.C. § 1441.

The *in rem* case is Kansas 2023-CV-000073 (Holman v. Future Growth LLC), which is pending REMOVAL to this Wichita Federal Court after the FRAUDULENT JOINDER of High Plains Title LLC with the clear intention to obstructing, converting Plaintiff's property rights (including those assigned by his single member LLC) and delaying removal of this case per 28 U.S.C. §§ 1331 and 1332 to this same federal district court, Plaintiff seeks a STAY issued by this Wichita federal court, and by the Kansas District Court on any further actions in the Kansas case as listed pending removal of this case to federal court.

c)  Previous motions to remove to this Court and providing evidence to the Ford County State Court of fraudulent joinder and conversion to dismiss this case with prejudice and avoid this whole set of issues were refused by that Clerk to be calendared and accordingly, not ruled upon by that Court.  Complete diversity now exists as of 12/20/23

by the State Court-ordered dropping of the 2nd Defendant, and this case is being filed barely over a week later with a request to both Courts to stay State proceedings pending removal of that *in rem* case Kansas 2023-CV-000073 (Holman v. Future Growth LLC).

d) In multiple attempted land sale transactions on 8/8/22, 3/3/23, and 8/29/23, Defendants obstructed the land sales by their statements and actions in bad faith prior to- and post 8/8/22 and 3/3/23, tortiously interfered with other parties when Defendants were not parties to the 8/29/23 land sales contract as proven in the sales agreement and statements by multiple realtors and other interfered parties, defamed, slandered, and libeled Plaintiff and Plaintiff's single member LLC (both citizens of Nevada), knowingly filed meritless claims and perjurious motions contrary to evidence they possess, with the expressed intent (per witnesses) of obstructing Plaintiff's land sale.

e) Plaintiff has been effectively "held hostage" due to conversion and tortious interference and bad faith, blocking his land sale for over a full year (blocked from exercise of a free will land sale) including expressed consequential damages known to defendants with their continued conversion despite them knowing they were blocking sales income for reinvestment, forcing payment of real estate taxes that Plaintiff would not have had to pay if the land had already been sold, blocked home improvements on a house needing upgrades for best marketable income, and numerous other costs that Defendants both knew and could have foreseen to justify consequential and punitive damages. Defendants intentionally clouded title (converted Plaintiff's real estate pasture) over the past year by refusing to cash the return of their earnest money check while admitting 2 months prior to their 8/16/23 filing their *in rem* KS State Court case that no sales contract with them exists, with the expressed intent of blocking (tortiously interfering and conversion) Plaintiff from selling his land held by his sole member LLC which shared financial responsibility with Plaintiff. Standing includes his LLC due to loan co-signing and which

Defendants have filed evidence claiming verbal contradicts by them with Plaintiff and rental possession of Plaintiff's and his LLC's land – a cloud on title that expressed blocked and converted multiple sales as previously listed, including the most recent sale attempt on 8/29/23 and continues to this day (12/31/23), where Plaintiff and Plaintiff's single member LLC are blocked from their own free exercise of real estate sale, with significant direct and consequential damages, economic and non-economic damages, and criminal aspects as will be addressed outside of this instant case.  The *in rem* State case lists Plaintiff's single member LLC as the sole Defendant since 12/20/23.  According to Plaintiff's LLC's counsel, vexatious plaintiffs in that case (Holmans) refused to stipulate per KSA 60's required adding of a Defendant Capt Linlor (Plaintiff in this case)  further obligating *pro se* Plaintiff Capt. Linlor to file this instant case while retaining counsel to remove that case to federal court and requesting a STAY of State Court proceedings while this instant suit is initiated and served, then those proceedings are removed to Wichita District Court.

f) The blocking of Plaintiff's land sale has caused extraordinary stress and emotional harm upon Plaintiff Capt. Linlor, including physical degradation of job performance with emotional harm and consequential damages (economic and non-economic) listed herein.

## FACTS AND CAUSES OF ACTION

1   In the 8/8/22 Dodge City land auction where Defendants (Holmans) were the high bidder at approximately $1.25 million, terms of the auction stated that all bids were "as is" and no contingent offers were allowed, however subsequently Defendants made 4 contingent bids.  Plaintiff Capt. Linlor accepted the 4 contingent bids in an attempt to salvage and complete the land sale deal despite some of Defendants' requests being expressed by him as not executable due to being illegal and not possible such as demanding property rights

not held by Plaintiff, but advised Defendants that any 5th contingency bid would be refused.  Defendants subsequent 5th submitted bid was rejected, but Defendants refused to release their sales offer, thereby blocking any sale to another buyer and converting Plaintiff's land from further sales.  Defendants evinced bad faith by refusing to close on the land sale where a 1031 tax exchange was pending on properties Plaintiff had been identifying and ingratiating himself with the owners of those investment property with costs accruing for 8+ years prior, knowing to Defendants to have interfered with those sales and causing consequential damages for the value of land that is now no longer available nor purchasable by Plaintiff due to conversion of Plaintiff's land by Defendants, rendering Plaintiff's desired new land unable to be purchased, with impeded income, tax credits, increases in value for new investments, all while imposing operational and consequential costs upon Plaintiff.

2    In the 3/3/23 private party land sale, Defendants (Holmans) again offered to purchase Plaintiff's pasture property this time "as is" at approximately the same amount as their winning bid of 8/8/22, namely $1.25 million, Defendants evinced bad faith and breach of contract by this time failing to show up at High Plains Title on 3/3/23 as previously agreed and refused to close, then falsely alleged that Plaintiff somehow wasn't prepared to close. Plaintiff stated to the title company that Plaintiff "*would do whatever was necessary to close (complete) the transaction*" and Plaintiff attended the closing in-person, where Defendants refused to answer phone calls or text messages or respond to any contact with Plaintiff or High Plains Title, which they later named as 2nd Defendant in the *in rem* State case for failing to return the earnest money check that Defendants were offered by Plaintiff and High Plains Title but Defendants Holmans refused to deposit the check, thereby "holding the transaction open" contrary to the sales contract and blocking Plaintiff from selling the land to other potential buyers.  This was

apparently part of a larger scheme by Defendants to force a lower sales price and harm Plaintiff.

3   In both the 8/8/22 and 3/3/23 transactions, there was no mention in any Seller's Attestation of any existing lease-use contract – an attestation that would have been required as part of a land sales contract if there were any current or on-going land lease to Defendants.  Defendants further knew that any land lease would be impossible since they were aware of the public land auction on 8/8/22 that did not list any land lease, and that any land lease would need to be agreed with a future owner.  When Defendants later falsely claimed in their *in rem* lawsuit that there was a "verbal" and admitted "no written contract for a pasture lease" in their filings, this is a cause of action for malicious prosecution or wrongful initiation of their civil proceedings, abuse of process, civil conspiracy, conversion, defamation, and intentional infliction of emotional distress since the real estate documents prove that there was no pasture lease lease agreement (verbal or written).  A further cause for malicious prosecution, etc. named above, is that in the *in rem* State lawsuit filed by Defendants (Holmans, individually),   Defendants intentionally sued in their personal names despite financial records proving that the Holmans – personally – never had any lease or financial agreement with Plaintiff Linlor or his LLC, to fraudulently and perjuriously attempt to shield Defendants' (Holmans) businesses from liability in counterclaims (which also implies why Defendants refused to stipulate to adding their businesses as parties to the *in rem* case, despite this being required under KSA 60).  However, despite this fact being pointed out to them via meet-and-confers, and numerous other items including defective service of initial process upon Plaintiff's LLC in the *in rem* case, as well as fraudulent joinder, Defendants' false allegations against Plaintiff's LLC and impacting Plaintiff Capt Linlor individually of fraudulent land title transfer as a back door way to effect conversion and potential unlawful transfer

of title, and other items proven as false by evidence in-the-record, Defendants wrongfully

abused the civil litigation process, plus other actions listed above up to and including

severe emotional distress plus further conversion through clouding of title impacting

personally upon Plaintiff Linlor due to his single member LLC's shared financial records

and false assertion that Plaintiff Linlor "verbally" made some pasture rental agreement

with the Holmans.  Despite the assertion of a verbal agreement being false, the

convertive and non-economic emotional effects of such clouded title upon Plaintiff and

thereby blocking him and his LLC from selling the pasture land is very real and in-

evidence, along with severe consequential damages from each of the 3 transaction dates

(the first two for bad faith and breach of contract, the last of 8/29/23 for tortious

interference, conversion, and emotional harm), plus other consequential costs, economic

costs, and non-economic emotional and punitive damages, all as listed herein.

4    On 4/20/23, Defendants (Holmans and their businesses Black Diamond partnership and

LLC, and Warner Angus Morgan) named in this instant lawsuit) fraudulently filed a US

Government farmer assistance document under penalty of perjury with the Farm Service

Agency in Jetmore, KS.  On that document signed by Defendant John Holman on behalf

of himself and his Black Diamond Partnership, the Holmans both first attested under

their business name Black Diamond Angus Ranch Partnership (not the LLC), thereby

admitting to co-liability of their businesses with Defendants' personal liabilities, to

having a written pasture lease agreement with Plaintiff Linlor's LLC "Future Growth,

LLC" (which is a citizen of Nevada, deriving per precedent from single member Linlor's

Nevada citizen status).  The US Government Farm Service Agency (FSA) then asked for

a copy of the lease claimed by the Holmans and their Black Diamond Partnership, and

after delaying for several weeks, John Holman revisited the FSA office and admitted that

his previous signed application for Government monies was fraudulent and perjurious,

and withdrew his request.  All this is documented in FSA files, and further attested in FSA employee statements to admissions made under penalty of perjury by John Holman on behalf of himself and the business name (Black Diamond Angus Ranch Partnership) that he typed/signed on his Government Assistance application.  In addition to criminal liability Holman has admitted, this cause supports a cause of action for malicious prosecution or wrongful initiation of civil proceedings, abuse of process, civil conspiracy, defamation, and intentional infliction of emotional distress since the US Government documents prove that there was no pasture lease lease agreement (verbal or written).

5    In the 9/29/23 land sale, now unrelated to the Holmans or any of their businesses (where tortious interference under good faith and fair dealing is claimed since none of the Defendants (Holmans, their businesses, nor Kite or Barngrover) were parties to the real estate sale or 1031 tax exchange or purchases of investment properties or improvements on properties to permit rental income but nonetheless falsely used their tortious interference described herein justifying a cause of action for malicious prosecution or wrongful initiation of civil proceedings, abuse of process, civil conspiracy, defamation, conversion, and intentional infliction of emotional distress.

6    All Defendants in this case knew in-advance of the severe financial, consequential, and non-economic damages and emotional + job performance impact their tortious interference would likely cause, but pursued their malicious and unjustified actions regardless.  This impacts have not been mitigated by Defendants, despite attempts by Plaintiff Capt. Linlor to discuss a settlement with the Holmans through their attorney and his assistant (Kite and Barngrover) prior to the 8/29/23 auction date, where they admitted to suing Plaintiff's LLC *in rem* and effects upon Plaintiff Capt. Linlor via shared finances and alleged verbal declarations involving him personally, with the Holmans and their

businesses and Kite and Barngrover all intentionally contacting numerous 3rd parties as stated starting around 8/20 (letters sent by Kite and Barngrover) and on 8/27 (calls to the realtors by Holman) and subsequent by all above to other 3rd parties to attempt to disrupt the 3rd party transaction under contract by Plaintiff and his LLC.

## CLAIMS

CLAIM 1

Claim 1 is against Aaron Kite and Ansel Kay Barngrover in their individual capacities. Kite and Barngrover were the attorney and his assistant for the Holmans in State Court *in rem* case Kansas 2023-CV-000073 (Holman v. Future Growth LLC) pending removal to this federal Court.  Plaintiff asserts that as parties to this instant case and likely witnesses, Kite and Barngrover are barred from representing the Holmans or other 3rd party defendants.

Claim 1:  malicious prosecution or wrongful initiation of civil proceedings filed by them on 8/16/23, abuse of process, civil conspiracy, defamation, conspiracy for conversion, and intentional infliction of emotional distress.

Each of the items above is clarified to avoid a "mere recitation objection", though to prevail on a claim of tortious interference against an "attorney" (kite), a plaintiff simply needs to establish that the defendant's conduct was "improper"[1]  which is clear as further explained below:

a) malicious prosecution or wrongful initiation of civil proceedings:  the *in rem* case that triggered this case (if not converted and interfered with three times ***Defendants in bad faith, with tortious interference on the third attempted sale to which Defendants were***

_____

[1]  Page 19, Long, Alex B., "Attorney Liability for Tortious Interference: Interference with Contractual Relations or Interference with the Practice of Law?" (2005). https://ir.law.utk.edu/utklaw_facpubs/329

*not a party, Plaintiff would have sold the pasture land over a year ago, and is still*

*blocked (converted) from selling it as of 1/1/24 with this outcome being the stated intent*

*of Defendants)*.  The Holmans in *in rem* case Kansas 2023-CV-000073 (Holman v.

Future Growth LLC) sued for 2 improper elements (later 3, amended):  return of their

$10,000 earnest money that had been returned to them 6 months prior to their lawsuit (4

days after they failed to attend the real estate closing and breached their contract), but

they refused to accept back their earnest money (even though Plaintiff had no obligation

to return it to them) and cash the check.   **Yet, the Holmans improperly and vexatiously**

**sued as their first and primary claim, to receive the check that they refused to**

**accept/deposit since 3/7/23 until 12/20/23 when they finally accepted it without**

**further consideration, but still having converted for over a year against Plaintiff.**

Claim 1 encompasses all 3 elements of Defendants' *in rem* lawsuit, all elements of which

were malicious prosecution, misuse of civil proceedings, frauds upon the Court,

conversion, defamation, and designed to extract unjustified damages to Defendants on

this Claim, and to support tortious and criminal racketeering, economic and non-

economic damages, and emotional damage from Plaintiff.

This Claim 1 also includes the cause of action of their *in rem* case's element two that

Defendants' alleged in their *in rem* case as damages later discovered to be fraudulent and

conspired upon to receive US Government farm subsidy payments where the Holmans

sued Plaintiff Capt. Linlor because Holmans claimed that the US Government did not pay

them assistance payments, even though the Holmans had signed documents proving that

they had fraudulently requested these US Government payments and were not entitled to

them.  Element 3 of this Claim 1 was a false claim (further malicious prosecution and

conversion and defamation, etc.) based on the transfer of land title on August 12, 2023

which the Holmans and their attorney+assistant Kite+Barngrover  perjuriously as

supporting their malicious and false civil proceedings cause, claimed happened on August 29, 2023 (after their state case was filed on 8/16/23), despite them filing the notarized and witnessed transfer quitclaim deed that shows that the land was lawfully transferred on 8/12/23 before their case was filed on 8/16/23, and before there was any foreknowledge or demand related to Defendants *in rem* State lawsuit.  They maliciously filed their lawsuit and mis-stated the transfer date (proven in-evidence) to falsely allege a fraudulent transfer and effect conversion through clouding of title, but with the actual intent of continuing to cloud title and block any sale of Plaintiff's land until Plaintiff would pay the Holman's over $100k extortion (racketeering money as provable on documents received from all Defendants including Kite+Barngrover) to permit Plaintiff's LLC's land sale to go forward.  These same actions support abuse of process, civil conspiracy, conversion, and defamation through the filing of their improper lawsuit and tortious interference with the ongoing land sale of 8/29/23 to which they were not a party by threatening litigation if the land sale were allowed to close and forcing insertion of impossible-to-satisfy claims that blocked the title company from issuing title insurance, and accompanying intentional infliction of emotional distress by making it impossible for Plaintiff to sell his (his LLC's) pasture land and invest in long-planned land sales critical to Plaintiff's retirement investments.

b)  Further, Defendants' improper conduct was to gain a business advantage by **bad faith and unfair competition actions** with a signed real estate sales contract.  This federal district court already has concluded that Kansas law recognizes a claim for "***unfair competition***" which Plaintiff asserts from Defendants' actions described herein in this Claim.

c)  Multiple 3ʳᵈ parties participating in the 30-day real estate sales contract starting 8/29/23 with earnest money received (beyond the pre- and post-auction realtor auction agency

contract) and all other conditions having been met except for the interference willfully caused by Defendants to this Count have confirmed their interpretation that Claim 1's Defendants threats and behaviors influenced the 3rd parties and compelled the 3rd parties to not "close" (successfully finish) the real estate transaction scheduled to close on 9/29/23 (from the auction of 8/29/23).  Consequential damages from the business expectancy of the sale closing relate to real estate 1031 exchanges, related taxes and fees, long term development of 3rd party relationships with potential real estate owners for purchase using a portion of the monies scheduled to be received from the transaction slated to close on 9/29/23, improvements on Plaintiff's homestead designed to improve the marketability and viability of marketing and rental of the homestead, and other economic and non-economic damages and harm caused personally against Plaintiff by Defendants in this Claim.

d) In keeping with local Court precedent [2] "this issue is not capable of summary determination since Plaintiff have alleged sufficient facts that, but for defendants' actions, Plaintiff would have continued to realize his business expectancy."  This petition asserts Plaintiff is reasonably certain that, but for Defendants' tortious and unlawful conduct included wrongful means to contact unrelated 3rd parties and threaten/attempt to interfere with the 3rd party contract, Plaintiff would have continued to realize in full his reasonable expectancy of future economic benefit under his real estate agreements and discussed follow-on purchases via other realtors, as well as not needing to pay for a multitude of taxes and other operational costs on the land that would have otherwise been

---

2  See page 13, Doc 16, BHCMC, LLC et al v. POM of Kansas, et al, D. Kan. 20-2609-DDC-ADM

sold and not needing to be paid by Plaintiff, resulting in a multiple-element chain of consequential damages, all suitable and ripe for consequential and punitive damages.

e) Plaintiff asserts that Defendants employed "wrongful means" which includes "independently actionable conduct, or conduct which itself could form the basis for liability"). [3] Specific wrongful means included calling and interacting with 3rd parties to delay and make unworkable Plaintiff's real estate land deals (sales and subsequent investments).

f) As referenced 2 pages prior, this Kansas federal district court already has concluded that Kansas law recognizes a claim for **unfair competition** [4] based on specific wrongful means included calling and interacting with 3rd parties to delay and make unworkable Plaintiff's real estate land deals (sales and subsequent investments).

CLAIMS 2-9

Claims 2-9 add the Defendants from Claim 1 plus Defendants Holmans and their related businesses.  Note:  Kite and Barngrover are the attorney and his assistant for the Holmans.

---

3  DP-Tek, Inc. v. AT & T Glob.  Info. Sols. Co., 100 F.3d 828, 834 (10th Cir. 1996) (interpreting Kansas law) ("state law suggests independently actionable conduct" is sufficient for a tortious interference tort). Cf. Classic Commc'ns, Inc. v. Rural Tel. Serv. Co., Inc., 956 F. Supp. 910, 922 (D. Kan. 1997

4  Page 16,  AgJunction LLC v. Agrian Inc., No. 14-CV-2069-DDC-KGS, 2014 WL 2557704, at *7 (D. Kan. June 6, 2014) (citing Airport Sys. Int'l, Inc. v. Airsys ATM, Inc., 144 F. Supp. 2D 1268, 1271 (D. Kan. 2001); see also Airport Sys., 144 F. Supp. 2d at 1270–72 (interpreting Kansas case law and Restatement (Third) of Unfair Competition). It has predicted Kansas would adopt the Restatement (Third) of Unfair Competition for this tort. See Airport Sys., 144 F. Supp. 2d at 1270. And, it has recognized that Kansas views this common law claim broadly:  *(quoting this Federal Court's precedent)*

"Unfair competition does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts. The category is open-ended, and nameless forms of unfair competition may be recognized **at any time** for the protection of commercial values."

Plaintiff asserts that as parties to this case and likely witnesses, they are barred from representing the Holmans or the Holmans' businsses.

a) Claim 2: tortious interference plus wrongful means, by all Count 2 defendants by mailing, emailing, and calling to unrelated 3rd parties after the 3rd parties were already under contract with Plaintiff as agents in the real estate land auction of 8/29/23 while asserting improper conduct and interference and not claiming protection of any potential judgment, (Plaintiff's realtors and title agents already under a sales-agency contract for which they were not paid as a result of the interference) and Defendants waiting until 2 days before the well-publicized land auction and threatening that the 3rd parties "would not be allowed" to sell the land as realtors/auctioneers and related capacities (as stated by the 3rd parties in statements to Plaintiff around 8/27/23 (two days ahead of the 8/29/23 action). John Holman himself called to the 3rd parties to threaten them not to complete their contractual sales duties referenced herein, and their attorney and assistant mailed and emailed and called to 3rd parties under contract with Plaintiff to likewise discourage them from completing their contractual duties to which Defendants were not parties, and that no legal claim or judgment withholding was asserted.

b) Claim 3. Defendants made false and defamatory statements as part of unfair competition and tortious interference, plus wrongful means.

1. John Holman called to Plaintiff's neighbor and threatened that the neighbor "had better not do business with Plaintiff" and that the neighbor "would be harmed" (manner unspecified) if the neighbor did business with Plaintiff.

2. John Holman called to one of Plaintiff's realtors and claimed that Holman would not allow the real estate auction for Plaintiff's land to complete and that the Realtor "had better not proceed with the land auction" scheduled for 2 days later on 8/29/23.

c) Claim 4.  Aaron Kite and Ansel Barngrover sent copies of the claim filed by them as a misuse of civil process and malicious prosecution, as part of unfair competition and tortious interference, plus wrongful means.  and defamation to Plaintiff's realtors and title company to chill and intimidate them from completing the real estate sale they were known by Kite and Barngrover and all Defendants for the realtor and title company to be under contract as 3rd parties to any complaint by the Defendants.

d) Claim 5.  Kite and Barngrover called and emails to attorneys for Plaintiff and land Buyers under-contract to threaten them with litigation if they were to proceed with the land sale, despite Defendants having no cause or claim on the land being sold, as part of unfair competition and  tortious interference, plus wrongful means.

e) Claim 6.  Kite and Barngrover actively worked to distribute Plaintiff's private email address and send computer viruses to Plaintiff to encumber Plaintiff and interfere with his normal business transactions, as part of unfair competition and  tortious interference, plus wrongful means.  Despite Cease-and-Desist requests by Plaintiff to not use email due to cybersecurity risks, Kite and Barngrover continued to send emails flagged as computer virus-laden, and to falsely file statements with the State Court to perjuriously claim perfected service even though they knew that pro se Plaintiff did not accept service by email and had previously affirmed this request to Kite and Barngrover.

f) Claim 7.  As a direct result of all defendants' statements to 3rd parties, Plaintiff incurred and continues to incur substantial damages including impairment of his reputation and being blocked from selling his LLC's real estate pasture, as part of unfair competition and  tortious interference, plus wrongful means.

g) Claim 8.  Plaintiff asserts that Defendants employed "wrongful means" which includes independently actionable conduct, or conduct which itself could form the basis for liability")  Specific wrongful means included calling and interacting with 3rd parties to

delay and made unworkable Plaintiff's real estate land deals (sales and subsequent

investments), plus consequential costs and income opportunities that Defendants knew of

due to the 1031 exchange listed in the sales contract which Defendants received, contacts

with Buyers and Buyers' attorney (both of whom were unrelated 3rd parties to

Defendants, the title company, and for all parties related to consequential damages from

the specific conducts performed by Defendants to this claim that interfered with

subsequent land sales, improvements of rental rental estate, payment of taxes and

receiving tax credits, and related actions.

h) Claim 9. Emotional distress. As a result of all Defendants to this Claim's actions,

Plaintiff's job performance and ability to sleep and concentrate were impaired beginning

at the timing of Defendants' in rem State lawsuit. This resulted in damage to Plaintiff's

reputation, mental anguish, sleeplessness, and ability to perform his airline job to

standards he had previous performed without injury or distress. The proven egregious

malicious prosecution and conversion blocking sale of Plaintiff's property are clearly

outrageous and "beyond the bounds of decency," particularly when coupled with the

proven defrauding of the US Government admitted by Defendants, including conspiracy

by Kite and Barngrover to tortiously and criminally defraud the US Government and then

sue Plaintiff and his LLC for the monies Defendants were not fraudulently paid.

Further, Defendants

1) acted both intentionally and recklessly in their convertive and bad faith actions, as well

as filing their lawsuit and tortiously interfering with the stated intent of blocking

Plaintiff's real estate sale with tortious inteference and malicious bad faith;

2) Defendants' conduct was both "extreme and outrageous" through attorney filings of

false prosecution, knowing filing of false documents such as for the check they refused to

cash, claims based on fraudulent Gov claims of a lease, and false claims of fraudulent

transfer for an unrelated land sale, and then threats by Plaintiff john holman against

multiple 3rd parties and threatening the 3rd parties with litigation if they completed the real

estate sales already under contract;

3) Plaintiff suffered "extreme and severe emotional distress" sufficient to negatively

impact his job performance and documented in independent training assessments; and,

4) "Defendants' outrageous conduct caused this extreme emotional distress" as proven in

independent physical coordination tests in advanced Level D flight simulator training

assessments that had been performed dozens of times previously but were documented to

be below standards <u>due to Defendants' *in rem* State lawsuit and conversion and tortious

interference blocking Plaintiff's land sale.</u>


CLAIMS 10-15

Claims 10-15 are solely against the Defendants Holmans and their related businesses.

a)  Claim 10.  Damage done to existing infrastructure in violation of KSA 58-2555(f)

through breaking of pipes by Defendants, plus their actions and agents, costing >$12,000

in repairs that Defendants refused to pay and Plaintiff was obligated to pay to provide

water as required under statute, plus  wrongful means.

b)  Claim 11.  Breach of verbal contract to pay consideration for Defendants' claim of

pasture rental and tenancy being due in the amount of $990,000 due by 12/1/23.

Collection of this rent was assigned to James Linlor, individually.

c)  Claim 12.  Breach of contract in the sales contracts of 8/8/22 and 3/3/23 on an implied

duty of good faith and fair dealing theory under Kansas law, as guided by precedent cited

below, is pleaded as a cause of action for breach of contract, not a separate cause of

action for breach of duty of good faith. In the real estate auction sales contract of 8/8/22,

Plaintiffs were the high bidder at approximately $1.25 million[5].  The auction terms and sales contract listed the pasture for sale on an "as is" basis, meaning that conditional offers would not be accepted.  Despite this knowledge by Defendants in this Count, Defendants demanded conditions (some of them which Plaintiff warned of his opinion as being unlawful, but which Defendants claims that High Plains Bank was demanding from them) not once, but five times.  After the 4th demand by Defendants, Plaintiff warned Defendants that any further demand for conditions would be refused and the sales contract canceled.  Despite this forewarning, Defendants made a 5th demand, and Plaintiff canceled the sales contract due to the breach of contract and bad faith of Defendants.

d) Claim 13  Defendants' fraudulent transfer or removal or failure to leave cattle and horses on the pasture, supporting a court injunction from sale of all animals needed to pay the rent above and thereby willfully evading an agister's lien per KSA 58-220, beyond real property liens asserted as of the date of this lawsuit's filing.

e) Claim 14.  Assigned collection for James Linlor to receive of 90% of FSA payments claimed by Defendants in this claim to have received, which they verbally agreed to pay to Future Growth LLC, estimated by them at at $60,0000/year for the past 10 years, being 0.90 * $600k = $540,000.  This amount was part of the basis for their in rem lawsuit

---

5  The land value previously under the sales contract for $1.25 million was only bid for approximately $700,000 at the 8/29/23 auction blocked by Defendants and their named-party attorneys, due to market conditions including rising interest rates and potential slanderous whisper campaigns designed to further exert pressure on Plaintiff to pay off Defendants to avoid protracted litigation.  Damages of over $500,000 in the sales price are clearly established, not including non-economic mental harm to Plaintiff, consequential damages, 3rd party costs, lost rental revenue, tax credits, and opportunity costs and tens of thousands of dollars in preparatory costs from not being able to purchase other investment property that had taken over 8 years to identify and become qualified with those private market sellers.

against Plaintiff; they are the ones who asserted the $60k/year figure for Plaintiff to collect against.

f) Claim 15. Consequential damages to include real estate taxes on the property blocked from sale, all upkeep and maintenance, multiple costs/commissions/expenses from realtors and title companies who will need to paid against for the time and actions if the land sale is allow to proceed, lost revenue and all unpaid IRS and state taxes pending which could have been paid from potential revenues from the land sale, but should now be counted as damages of an appropriate category, and contracts interfered with for Plaintiff's homestead and rental income including treble damages.

NATURE OF ACTION AND JURISDICTION

9. This is a complaint involving breach of contract involving tortious interference, breach of required faith dealing, fraud, breach of contract, malicious and fraudulent civil prosecution by Defendants, conversion, etc. as listed throughout herein

10. Plaintiff (and Plaintiff's single member LLC in the *in rem* case slated to be removed to this Court) are each Nevada citizens, with the real estate involved is located in Ford County, Kansas. Thus, the wrongs Plaintiff experienced were felt in Kansas, making Kansas the source of the substantive law governing plaintiffs' claims, but with complete Diversity of the remaining Defendant in the *in rem* case and in this case.

11. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

a John and Marcella Holman in their individual capacities, thereby encompassing Black Diamond Angus Ranch Partnership and Warner Angus Ranch Morgans, sued on 8/16/23 Future Growth LLC, a single member LLC with citizenship in Nevada, based on James Linlor being a citizen of Nevada.

b   Defendants Holmans have let their KS LLC registration lapse since 2022 for Black

Diamond Angus Ranch LLC but not dissolved the LLC, making their LLC liable

under both its specific name and their individual capacities.

c   James Linlor has standing in this case since personal economic and non-economic

(emotional) harm was done to him by the Holmans, Kite and Barngrover, and the

Holmans' 3 businesses (listed as Defendants), plus that filings by the Holmans in *in

rem* case Kansas 2023-CV-000073 (Holman v. Future Growth LLC) stated that a

**_verbal_** contract for grazing existed during 2023.  Despite James Linlor attesting that

no such contract existed with the Holmans, the fact that only James Linlor (and not

the corporation Future Growth LLC) have the capacity for **verbal speech,** Linlor

asserts that any alleged verbal communication was done to include himself.  Linlor

further was assigned by Future Growth LLC in December 2023 for collection of the

unpaid pasture rent that the Holmans admit they did not pay for 2023 which is due

immediately and notification previously communicated to them via attorneys, and

that they further intentionally failed to leave livestock on the pasture land to evade an

agister's lien (KSA 58-220) and falsely transfer the livestock to the Holmans and

their businesses.

d   The Holmans sued (and were abetted by Defendants Kite and Barngrover) in

malicious prosecution, wrongful initiation of civil proceedings, abuse of process,

civil conspiracy, defamation, and intentional infliction of emotional distress for 3

claims (per their amended petition of December 2023):  1) to receive the $10,000

earnest money check **that was offered to them since 3/7/23 but that they refused

to accept and cash (deposit),** 2) for "damages" exceeding $60,000 that they,

through their attorney Aaron  Kite, admitted were actually likely untrue as stemming

from US Government farm subsidy payments that the Government declined to pay them for 2023, that documents signed by John Holman attest to no lease contract existing 3) for fraudulent transfer of title to a 3rd party (another single-member Nevada LLC owned by Linlor) falsely claimed to occur after Defendants' lawsuit was filed. In fact, as proven by the transfer deed filed into evidence in the in rem case, the lawful transfer was completed before Plaintiff had any knowledge or awareness of the *in rem* lawsuit. All Defendants claimed as the basis for their 3rd claim that the transfer occurred on the recording date of 8/29 when the deed showed that the recognized transfer date was 8/12/23, four days prior to the meritless *in rem* lawsuit being filed.

PARTIES

(1) Black Diamond Angus Ranch LLC (wholly owned by Holmans);

(2) Black Diamond Angus Ranch Partnership (wholly owned by Holmans);

(3) Warner Angus Ranch Morgans business, (owned by Marcella Warner Holman and John Holman);

(4) Aaron Kite, in his individual capacity for tortious interference in verbally and written threatening Linlor and other parties to stop the land sale by Future Growth LLC, plus other causes as listed above;

(5) Ansel Kay Barngrover, in her individual capacity, both of her and Kite for civil fraud, violating cease-and-desist demands by Plaintiff to them, and tortious interference themselves, and other causes as listed above.

REMEDIES

2. A STAY of *in rem* case is Kansas 2023-CV-000073 (Holman v. Future Growth LLC), which is pending REMOVAL to this Wichita Federal Court

3. Declarative and injunctive judgment in favor of Plaintiff t*o permit Plaintiff and Plaintiff's land-owning LLC to <u>immediately</u> sell* the pasture land without any claims or title clouded or with any interference related to Defendants or their businesses.

4. Exemplary, consequential (as listed herein), and punitive damages pending determination and **that <u>CONTINUE TO ACCRUE</u>** due to the continued blocking from sale of Plaintiff's LLC's pasture land property, for tortious interference with treble damages as indicated per statute for transactions with 3 or more realtors and 3 or more private parties, plus title company personnel, 1031 exchange personnel, travel accrued over years in preparation for investment selection and being considered by potential sellers in limited availability transactions, plus consequential costs including taxes, operations, home and landscaping improvements blocked from Defendants' actions necessary for property rental and marketability, and replacement of Plaintiff's car as planned due to severe malfunctions, which was not possible due to funds being blocked by Defendants. Realtors and other agents are located in the Dodge City area and around the country, each of whom are on-record that Defendants  willfully and materially attempted to interfere with land transactions through statements and actions intended to chill their rightful participation in land sales.

5. Declaration of Defendants Holmans and their businesses as vexatious parties so that their patter of behaviors will be blocked from filing lawsuits for the next 10 years.

6. Declaration and injunction of Defendants Kite and Barngrover suspending their law licenses and barring them from any practice or consultation of/related to law for the next 10 years, as well as exemplary, consequential, and punitive damages as may be determined.

7.  Declarative, exemplary, and punitive damages to be determined, to include economic and non-economic damages to the Plaintiff, including consequential damages as described previously, and punitive damages as may be determined.

8.  Other damages as this Court may deem appropriate, to include paid marketing of facts of this case on billboards to include Defendants names and convictions to avert similar actions by other vile criminals.

ATTESTATION

I, James Linlor, being over 18 years of age, attest to the following items and certify that I am able to testify to them under oath as part of this case.

(1)  Defendants (holmans) only made contingent offers in the as-is land sale of 8/8/22, thereby impeding that land in bad faith and breach of contract.

(2)  Defendants (holmans) failed to attend the closing on 3/3/23 at High Plains Title and then falsely blamed Plaintiff James Linlor, despite Linlor being ready and willing to close the transaction and hold back any monies if an issue.

(3)  Plaintiff Linlor returned the $10,000 deposit to Defendants (holmans) on 3/7/23 but Defendants refused to accept the monies, to create a false controversy that they later admitted by accepting the monies on 12/20/23 and signing a statement in June 2023 that that was no further claimed contract.

(4)  Plaintiff would have sold (and directed sale through his LLC) of his pasture land on 9/29/23 but was blocked by Defendants' conversion of Plaintiff's land title and tortious interference.  Buyers under contract and 3rd parties all said that they would have completed the purchase transaction if not for tortious interference by Defendants.

(5)  Defendants (holmans, individually) never had a pasture lease agreement with Plaintiff's LLC, Future Growth LLC.

(6) Plaintiff Linlor (assignee for collection from his single-member LLC) was assigned the 90% of $600k = $450,000 verbally agreed by Defendants (holmans, individually) of any authorized US Gov assistance.

(7) While Plaintiff Linlor (assignee for collection from his single-member LLC) asserts that no pasture lease existed, since Kansas law has recognized conversion to the holmans based on their admittedly only verbal allegation, Plaintiff asserts that if he would have agreed to any lease, it would have been for no less than $990,000 for 2023, which was therefore due by 12/1/23.  No consideration was paid by Defendants (holmans) for their alleged land lease during 2023 or for the 2023 grazing year.

I certify the above statements as being true-and-correct under penalty of perjury.

*Signed  Capt. James Linlor at Phoenix, Arizona*


This filing was produced by the pro se Plaintiff without the assistance of an attorney.  Plaintiff affirms that all matters cited herein are true-and-correct to the best of Plaintiff's knowledge, under penalty of perjury.


December 31, 2023             Signed: *Signed  Capt. James Linlor*

Capt. James Linlor, Plaintiff Pro Se

(6) Plaintiff Linlor (assignee for collection from his single-member LLC) was assigned the 90% of $600k = $450,000 verbally agreed by Defendants (holmans, individually) of any authorized US Gov assistance.

(7) While Plaintiff Linlor (assignee for collection from his single-member LLC) asserts that no pasture lease existed, since Kansas law has recognized conversion to the holmans based on their admittedly only verbal allegation, Plaintiff asserts that if he would have agreed to any lease, it would have been for no less than $990,000 for 2023, which was therefore due by 12/1/23. No consideration was paid by Defendants (holmans) for their alleged land lease during 2023 or for the 2023 grazing year.

I certify the above statements as being true-and-correct under penalty of perjury.

*Signed  Capt. James Linlor at Phoenix, Arizona* 

This filing was produced by the pro se Plaintiff without the assistance of an attorney. Plaintiff affirms that all matters cited herein are true-and-correct to the best of Plaintiff's knowledge, under penalty of perjury.

December 31, 2023            Signed: *Signed  Capt. James Linlor* 

                               Capt. James Linlor, Plaintiff Pro Se