## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES LINLOR,

                            Plaintiff,                          Case No. 24-1001-DDC-GEB

v.

JOHN HOLMAN, et al.,

                            Defendants.

## <u>MEMORANDUM AND ORDER</u>

A land sale in western Kansas has gone awry, and legal chaos has ensued.  Defendants John Holman and Marcella Warner Holman—who attempted to buy the land—filed a state court in rem lawsuit against the seller, plaintiff James Linlor's[1] businesses.  In something of a tit for tat, plaintiff then filed this lawsuit against the Holmans, their businesses, and their attorneys.  He claims that defendants and their lawsuit have blocked the sale of his pasture.  Plaintiff's Complaint asserts a smorgasbord of claims.  That smorgasbord is the subject of defendants' Motion for Judgment on the Pleadings or to Dismiss (Doc. 36), which, as explained later, the court addresses as a Motion for Judgment on the Pleadings.[2]  Plaintiff has responded to the

---

[1]      Plaintiff proceeds pro se.  The court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for the pro se litigant.  *Hall*, 935 F.2d at 1110.

[2]      Plaintiff asks the court to reject defendants' brief (Doc. 36) and its attachment (Doc. 36-1) because defendants filed it "without leave of the Court, and without any meet-and-confer or notices of dispute under LR 7."  Doc. 38 at 1.  But D. Kan. Rule 7 doesn't require defendants to secure the court's leave to move for judgment on the pleadings.  Nor does it require defendants to meet and confer with plaintiff before filing such a motion.

motion.[3]  As explained below, defendants' motion is granted in part and denied in part.  This Memorandum and Order also denies plaintiff's Motion for Partial Summary Judgment (Doc. 21), which the court construes as a sanctions request, and denies plaintiff's Emergency Motion to Quiet Title (Doc. 20).

## I.        Background

The following facts come from plaintiff's Complaint (Doc. 1).  It isn't a model of narrative clarity.  But given plaintiff's pro se status, the court does its best to apprehend the issues that gave rise to this litigation.  The court accepts the facts pleaded there as true and views them in the light most favorable to plaintiff, the party opposing the motion.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (explaining that on a motion for judgment on the pleadings under Rule 12(c) the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the non-moving party" (citations and internal quotation marks omitted)).

Plaintiff alleges defendants have blocked the sale of his pasture in Ford County.  Doc. 1 at 2.  Plaintiff has tried to sell the land on multiple occasions:  August 2022, March 2023, and August 2023.  *Id.* at 3.  Defendants obstructed the August 2022 and March 2023 sales.  *Id.*  And defendants interfered with the August 2023 sale, even though they weren't parties to that contract.  *Id.*  The court recounts each transaction in detail below.

---

[3]        Plaintiff's filings ask for a remote hearing.  Our court's local rule provides:  "The court may set any motion for oral argument or hearing at the request of a party or on its own initiative."  D. Kan. Rule 7.2.  In the court's view, a hearing will not assist its work.  And so, to grant plaintiff's request would contradict Fed. R. Civ. P. 1 because a hearing is unnecessary.  Exercising its discretion, the court denies this request for hearing.

In August 2022, defendant John Holman and Marcella Warner Holman[4] bought the land at auction "as is" for $1.25 million. *Id.* at 4–5. The auction didn't allow contingent offers, but the Holmans made four contingent bids, and plaintiff accepted them. *Id.* Plaintiff warned the Holmans that he would refuse a fifth contingency bid, but defendants submitted one anyway. *Id.* Plaintiff, as promised, rejected the bid. *Id.* at 5. But the Holmans refused to release their sales offer, blocking the sale of the land to another buyer. *Id.* The Holmans also refused to close on a land sale where a 1031 tax exchange was pending against properties that plaintiff "had been identifying and ingratiating himself with the owners of those investment propert[ies.]" *Id.* Because of the Holmans, plaintiff can't purchase the new land. *Id.*

In March 2023, the Holmans again offered to purchase plaintiff's pasture. *Id.* at 5. The Holmans offered to purchase the property "as is" for $1.25 million. *Id.* But they refused to close, alleging plaintiff wasn't prepared to close. *Id.* Plaintiff told the title company he would do whatever was necessary to close the transaction. *Id.* The Holmans didn't show up at the title company at the agreed-upon date. *Id.* Plaintiff and the title company offered the Holmans an earnest money check, but they refused to deposit the check. *Id.* This held the transaction open, violated the sales contract, and blocked plaintiff from selling the land to anyone else. *Id.*

Critically, in neither the August 2022 nor March 2023 putative transactions did anyone mention an existing lease-use contract in the Seller's Attestation. *Id.* at 6–7. Defendants knew that no land lease existed because the August 2022 auction didn't list a land lease. *Id.*

In April 2023, John Holman, acting on behalf of himself and his Black Diamond Partnership, filed a document with the Farm Service Agency claiming to have a written pasture

---

[4]    The court attributes the conduct alleged about the August 2022 transaction to the Holmans only—and not their businesses or counsel—because plaintiff alleges "Defendants (Holmans) were the high bidder[.]" Doc. 1 at 4. The court does the same, below, for the March 2023 transaction because plaintiff alleges "Defendants (Holmans) again offered to purchase Plaintiff's pasture property[.]" *Id.* at 5.

lease agreement with plaintiff's LLC.  *Id.* at 7–8.  When FSA asked for a copy of the lease, Mr. Holman returned to the FSA office and admitted that his document was false and withdrew his request.  *Id.*

In August[5] 2023, plaintiff again tried to sell his land.  *Id.* at 8 (Compl. ¶ 5).  None of the defendants were parties to this sale or its related transactions.  *Id.*  Nonetheless, defendants interfered with the sale.  *Id.*

In December 2023, defendants Johnathan Holman and Marcella Warner Holman filed a separate lawsuit against plaintiff's limited liability companies.  *See* Exhibits in Support of Notice of Removal, *Holman v. Future Growth, LLC*, No. 24-1012 (D. Kan. Jan. 17, 2024).[6]  This is an in rem lawsuit originally filed in state court, then removed to our court.  *Id.*  Plaintiff alleges that defendants Jonathan Holman and Marcella Warner Holman, in this *Future Growth* lawsuit, have falsely claimed that a verbal contract for a pasture lease exists.  Doc. 1 at 6–7.  Plaintiff further alleges that the Holmans sued in their personal names to shield their businesses from counterclaim liability.  *Id.*  And, plaintiff alleges, the Holmans have abused the civil litigation process wrongfully.  *Id.*

---

[5]      Plaintiff's Complaint, in paragraph five, lists the date of this auction as "9/29/23."  Doc. 1 at 8. But elsewhere, the Complaint alleges this auction occurred on "8/29/23."  *Id.* at 4, 8.  The court believes, based on the Complaint's context, that September date is a typographical error, and uses the August date here.

[6]      The court refers to this other case—a matter outside the pleadings—so that the reader better understands the parties' dispute.  Indeed, this other case is the axis around which plaintiff's tit-for-tat lawsuit orbits.  In general, when the court considers materials outside the pleadings on a motion for judgment on the pleadings, the court must convert the motion into one seeking summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  But the court need not convert the motion here because the court may take judicial notice of documents filed in other lawsuits.  *See Cont'l Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1071 (D. Kan. 2007) (taking judicial notice of "pleadings, court orders, motions, and certified transcripts of hearings from [a related] state court case" to decide a Rule 12(c) motion); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (10th Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

With this background in mind, the court turns to defendants' motion, starting with the governing legal standard.

## II.        Legal Standard

Defendants' motion doesn't commit to a single rule of civil procedure.  Instead, defendants move under Fed. R. Civ. P. 12(c) "and/or" Fed. R. Civ. P. 12(b)(6).  *See* Doc. 35 at 1. But defendants already have answered.  Doc. 32.  So, the court must construe defendants' motion as one under Fed. R. Civ. P. 12(c).  *See* Fed. R. Civ. P. 12(b) (requiring a motion under the rule to "be made *before* pleading if a responsive pleading is allowed." (emphasis added)).

A court evaluates a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss.  *Atl. Richfield*, 226 F.3d at 1160.  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Atl. Richfield*, 226 F.3d at 1160 (explaining that on a Rule 12(c) motion, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party" (citation and internal quotation marks omitted)).  And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action,'" which, as the Supreme Court explained, "'will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.      Analysis

Plaintiff's Complaint brings a lot of claims.[7]  And, as mentioned above, plaintiff's Complaint isn't a model of clarity.  He has divided his Complaint into 15 "Claims" with Claim 1 asserted against defendants Kite and Barngrover, Claims 2–9 asserted against all defendants, and Claims 10–15 asserted against defendants John Holman, Marcella Warner Holman, and their businesses.  But not every "Claim" actually asserts a claim and some of the claims assert far more than one cause of action.  So, the court pauses here to outline its understanding of the claims the Complaint actually asserts.

Construing plaintiff's Complaint broadly, the court concludes that "Claim 1" asserts nine distinct claims against defendants Kite and Barngrover.  The court addresses these nine claims first.  It then addresses the claims against the Holmans and their businesses together, construing plaintiff's Complaint to assert nine claims against them.  After addressing all claims, the court considers plaintiff's request for sanctions against defendants—including plaintiff's Motion for Partial Summary Judgment (Doc. 21)—which the court construes as a motion for sanctions.  The court then addresses plaintiff's Emergency Motion to Quiet Title (Doc. 20) and closes with its conclusions.  It begins with the claims against defendants Kite and Barngrover, below.

---

[7]      Plaintiff brings his claims under Kansas law and defendants' motion cites Kansas law.  *See* Doc. 1 at 13 ("Kansas law recognizes a claim for unfair competition[.]" (emphasis omitted)); *id.* at 17 ("Breach of contract . . . under Kansas law[.]"); Doc. 36 (citing Kansas law exclusively).  The court thus presumes that the parties apply Kansas law because this case involves real property.

When a federal court sits in diversity, it must apply the conflict of laws rules of the state in which it sits to determine the applicable law.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "Kansas uses the rule *lex loci rei sitae* which provides for the use of local law to determine the rights and obligations of the parties to real property."  *Larson v. Chase Manhattan Mortg. Corp.*, No. 05-1005 WEB, 2006 WL 2375610, at *4 (D. Kan. Aug. 15, 2006) (citing *Resolution Tr. Corp. v. Atchity*, 913 P.2d 162, 169 (Kan. 1996)).  Given that the real property at issue is in Kansas, the court applies Kansas law.

### A.     "Claim 1" against defendants Kite and Barngrover.

Plaintiff alleges that defendant Kite is the Holmans' attorney.  Doc. 1 at 9.  And

defendant Barngrover is Kite's assistant.  *Id.*  Plaintiff brings "Claim 1" against defendants Kite

and Barngrover.  Though labeled one claim, Claim 1 actually asserts nine claims:  malicious

prosecution, abuse of process, civil conspiracy, defamation, conspiracy for conversion,

intentional infliction of emotional distress, tortious interference, unfair competition, and fraud.

Defendants have moved for judgment on the pleadings against all nine claims.  The court

considers each, in turn, below.

### 1.     Malicious Prosecution

In "Claim 1," plaintiff brings a malicious prosecution claim against defendants Kite and

Barngrover.  To succeed on a malicious prosecution claim, a plaintiff must establish five

elements:

> (a) That the defendant initiated, continued, or procured civil procedures against
> the plaintiff.
>
> (b) The defendant in so doing acted without probable cause.
>
> (c) That the defendant acted with malice, that is he acted primarily for a purpose
> other than that of securing the proper adjudication of the claim upon which the
> proceedings are based.
>
> (d) That the proceeding terminated in favor of the plaintiff.
>
> (e) That the plaintiff sustained damages.

*Budd v. Walker*, 491 P.3d 1273, 1281 (Kan. Ct. App. 2021) (quotation cleaned up).  Defendants

argue that plaintiff's malicious prosecution claim fails on element four because plaintiff hasn't

pleaded that a proceeding terminated in his favor.  Nor could he.

A proceeding may terminate in one of three ways:  "(1) the favorable adjudication of the

claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing

them, or (3) the dismissal of the proceedings because of a failure to prosecute them." *Id.*

(quotation cleaned up).  Plaintiff's Complaint never alleges that any of these three things

happened.  To the contrary, the *Future Growth* case about which plaintiff complains is ongoing.

*See Holman v. Future Growth, LLC*, No. 24-1012-EFM-TJJ (D. Kan.) (last accessed August 8,

2024).  The court thus agrees with defendants that plaintiff's Complaint fails to state a claim for

malicious prosecution.

### 2.      Abuse of Process

The court construes plaintiff's Complaint to bring a claim for abuse of process against

defendants Kite and Barngrover.  Doc. 1 at 9.  Plaintiff alleges that the *Future Growth* case is an

improper and vexatious lawsuit, so these defendants are liable for abuse of process.  But, like

malicious prosecution, "a crucial element of a claim for abuse of process is termination of the

prior proceeding in [plaintiff's] favor."  *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL

389319, at *1 (D. Kan. July 1, 1996) (applying Kansas law).  As just mentioned, plaintiff's

Complaint doesn't allege that the *Future Growth* lawsuit has terminated in his favor.

This prerequisite aside, an abuse of process claim has three elements:

(1) that the defendant made an illegal, improper, perverted use of the process, (a
use neither warranted nor authorized by the process), and (2) that the defendant
had an ulterior motive or purpose in exercising such illegal, perverted, or
improper use of the process, and (3) that damage resulted to the plaintiff from the
irregularity.

*Vanover v. Cook*, 260 F.3d 1182, 1191 (10th Cir. 2001) (applying Kansas law) (quoting *Porter v.*

*Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980)).  Our Circuit has explained the difference

between abuse of process and malicious prosecution this way:  "'Malicious prosecution is

concerned with maliciously causing process to issue, while abuse of process is concerned with

the improper use of process after it has been issued.'"  *Id.* (quoting *Advantor Cap. Corp. v.*

*Yeary*, 136 F.3d 1259, 1264 (10th Cir. 1998)).

To understand plaintiff's abuse of process claim, the court considers his entire Complaint. Plaintiff's Complaint alleges "wrongful initiation of civil proceedings filed by" defendants Kite and Barngrover.  Doc. 1 at 9.  Outside of "Claim 1,"—the claim against Kite and Barngrover specifically—plaintiff's Claim 4 alleges that Kite and Barngrover sent copies of the lawsuit to plaintiff's "realtors and title company to chill and intimidate them from completing the real estate sale[.]"  *Id.* at 15.  Claim 5 alleges that Kite and Barngrover threatened plaintiff's attorneys with litigation.  *Id.*  Claim 6 alleges that Kite and Barngrover sent plaintiff "emails flagged as computer virus-laden" and told the state court they'd served plaintiff, even though plaintiff had asked them not to send emails due to cybersecurity risks.  *Id.*  Plaintiff also argues that these defendants used "lawfare" to tortiously interfere with his land sale.  Doc. 38 at 7.

This rhetoric doesn't cut it to state an abuse of process claim.  None of the above—filing a lawsuit, sending copies of a petition to third parties, threatening litigation, or sending emails— qualifies as "illegal, improper, or perverted use of the process[.]"  *Vanover*, 260 F.3d at 1191 (citation and internal quotation marks omitted).  To hold otherwise would deem all litigation illegal, improper, or perverted.  Plaintiff's Complaint offers merely "labels and conclusions" that Kite and Barngrover abused the litigation process.  *Twombly*, 550 U.S. at 555.  But Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  In other words, rhetoric is no substitute for pleading essential facts.  Plaintiff's abuse of process claim against defendants Kite and Barngrover thus fails.

### 3.    Civil Conspiracy

Plaintiff also brings a civil conspiracy claim against defendants Kite and Barngrover. Doc. 1 at 9.  A claim under Kansas law for civil conspiracy has five elements:  "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."

*State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1226 (Kan. 1991) (citation and internal quotation marks omitted).  Defendants argue that plaintiff hasn't alleged any meeting of the minds or an attempt to accomplish an unlawful act.  Doc. 36 at 12.  Plaintiff responds that he "does plead the elements for conspiracy[.]"  Doc. 38 at 10.  Plaintiff alleges a "conspiracy by Kite and Barngrover to tortiously and criminally defraud the U.S. Government[.]"  Doc. 1 at 16.  But pleading the words that formulate a claim isn't enough.  "A pleading that offers . . . a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quotation cleaned up).  Nowhere does plaintiff's Complaint allege a meeting of the minds or an attempt to commit an unlawful overt act, much less allege any specific facts about Kite and Barngrover's involvement in the alleged conspiracy (beyond simply filing the *Future Growth* lawsuit).  Plaintiff's civil conspiracy claim fails.

### 4.    Defamation

Plaintiff asserts that defendants Kite and Barngrover have defamed him.  Doc. 1 at 9.  How, exactly, they have defamed him is far less clear.  A defamation claim under Kansas law has three elements:  "(1) false and defamatory words; (2) communication to a third person; and (3) harm to the reputation of the person defamed."  *Byers v. Snyder*, 237 P.3d 1258, 1270 (Kan. Ct. App. 2010).  Defendants argue that plaintiff has failed to allege facts supporting elements one and three.  To decide this part of the motion, the court need only address element three: reputational harm.

Plaintiff's Complaint alleges—generically—that defendants defamed him and harmed his reputation.  But that won't cut it.  "This court has previously found that generic allegations of reputational injury are insufficient to meet the requirement of Fed. R. Civ. P[.] 9(g) that claims of special damage be definitely alleged."  *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1266, 1271 (D. Kan. 2012).  Fed. R. Civ. P. 9(g) provides that if "an item of special damage is claimed, it

must be specifically stated." And plaintiff's response to defendants' motion never addresses defendants' argument about his reputation damages. *See generally* Doc. 38. Plaintiff's Complaint doesn't comply with this special damages pleading requirement and his response leaves defendants' argument unopposed. So the court grants defendants' motion on plaintiff's defamation claim against defendants Kite and Barngrover.

### 5.   "Conspiracy for Conversion"

Plaintiff asserts a "conspiracy for conversion" claim against defendants Kite and Barngrover. Doc. 1 at 9. Defendants assert that plaintiff's conversion claim fails because the "claim of conversion only applies to personal property and not to real property." Doc. 36 at 10. Indeed, under "Kansas law, 'conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights.'" *Alexander v. BF Labs Inc.*, No. 14-2159-KHV, 2016 WL 5243412, at *5 (D. Kan. Sept. 22, 2016) (quoting *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005)). Plaintiff's Complaint doesn't mention any goods or personal chattels. *See generally* Doc. 1. It's true that plaintiff's response briefly asserts, in cursory fashion, that "personal property of Plaintiff was stolen by defendants[.]" Doc. 38 at 9. But the problem is that his Complaint doesn't allege anything of the sort. And this responsive argument in a brief a "formulaic recitation of the elements of a cause of action," which "will not do." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). The court thus grants defendants' motion on plaintiff's conversion claim against defendants Kite and Barngrover.[8] He has failed to plead an essential element of the claim.

---

[8]     Plaintiff's response brief seems to recognize that his conversion claim has problems. So, he suggests that he "perhaps should have used the term slander of title instead of conversion[.]" Doc. 38 at 10. Plaintiff's Complaint—though it asserts many claims—doesn't mention "slander of title." *See generally* Doc. 1. And Fed. R. Civ. P. 8(a)(2) requires that a *pleading* contain a short and plain statement

### 6.      Intentional Infliction of Emotional Distress

Plaintiff also brings a claim against defendants Kite and Barngrover for intentional infliction of emotional distress.  Doc. 1 at 11.  An intentional infliction of emotional distress claim under Kansas law has four elements:  "(1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."  *Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010) (citation omitted).  Defendants ask the court for judgment against this claim because plaintiff has failed to plead extreme and outrageous conduct.

Kansas courts have set a high bar for extreme and outrageous conduct.  Such "conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society."  *Id.*  And an "actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."  *Id.* (citation and internal quotation marks omitted).  In *Burgess v. Perdue*, a plaintiff brought an intentional infliction of emotional distress claim against a doctor because the doctor had called her and told her that the hospital "'had her son's brain in a jar.'"  721 P.2d 239, 242 (Kan. 1986).  The Kansas Supreme Court held that these statements "were probably shocking," but "they were not outrageous[.]"  *Id.* at 243.

Here, plaintiff alleges defendants'

---

of plaintiff's claim.  Plaintiff hasn't moved to amend his Complaint to assert a slander of title claim.  The court must construe plaintiff's filing broadly because he proceeds pro se, but the court can't add allegations to his Complaint that aren't there or construct arguments for him.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  And plaintiff must comply with the court's procedural rules.  *Id.*  So, the court rejects plaintiff's attempt to "perhaps" throw a slander of title claim onto his smorgasbord of claims.

conduct was both 'extreme and outrageous' through attorney filings of false prosecution, knowing filing of false documents . . . , fraudulent . . . claims of a lease, and false claims of fraudulent transfer for an unrelated land sale, and then threats by Plaintiff [J]ohn [H]olman against multiple 3rd parties and threatening the 3rd parties with litigation if they completed the real estate sales already under contract.

Doc. 1 at 16–17.  The court agrees with defendants.  These allegations don't go "beyond the bounds of decency." *Valadez*, 229 P.3d at 394.  As explained above, plaintiff takes issue with defendants Kite and Barngrover filing the *Future Growth* lawsuit, but that lawsuit is ongoing. And merely filing a lawsuit can't qualify as an act beyond the bounds of decency.  Again, plaintiff asks the court to create tort liability against an attorney and a legal assistant for merely litigating causes on behalf of a client.  The court declines to do so.  Lawyers litigate.  The court thus grants defendants' motion against plaintiff's intentional infliction of emotional distress claim.

### 7.    Tortious Interference

Still within "Claim 1," plaintiff also asserts a claim for tortious interference against defendants Kite and Barngrover.  Doc. 1 at 11.  But it's not clear what kind of tortious interference claim plaintiff brings.  Kansas law recognizes two kinds:  tortious interference with a contract and tortious interference with business expectancy.  The court first must determine which of these plaintiff means to assert.

Start with tortious interference with a contract.  Under Kansas law, the "five elements of a tortious interference with a contract claim are:  (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." *Diederich v. Yarnevich*, 196 P.3d 411, 418 (Kan. Ct. App. 2008) (quotation cleaned up).  Next:  tortious interference with business expectancy.  This claim also has five elements:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

*Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986). These two types of tortious interference "torts tend to merge somewhat in the ordinary course[.]" *Id.* But they are different. Tortious interference with a contract "is aimed at preserving existing contracts[.]" *Id.* Tortious interference with business expectancy is aimed "at protecting future or potential contractual relations." *Id.*

Here, the heart of plaintiff's Complaint is that defendants have prevented him from selling his land. Plaintiff alleges that defendants tortiously interfered with an August 2023 land sale that never closed. Doc. 1 at 11–12. Given the evidence absence of a clear, finalized contract, plaintiff can't sustain a claim for tortious interference with a contract.[9] And so, the court construes his tortious interference claim as a tortious interference with business expectancy claim.

Defendants have moved for judgment against this claim. In response, plaintiff asks the court to "stay" his tortious interference claims pending resolution of the *Future Growth* case. Doc. 38 at 3. He asserts that he "realiz[ed] that the in rem Future Growth case needed to be completed before the tortious interference claim is at-bar[.]" *Id.* at 6. So, plaintiff asserts, he proposed separating the tortious interference claims and staying them. *Id.* Indeed, plaintiff filed a "Motion to Bifurcate" under Fed. R. Civ. P. 42 that asks the court to stay some of his claims

---

[9]     At times, plaintiff's Complaint seems to allege that the parties formed a contract. But plaintiff can't have it both ways. He's alleged that defendants interfered with one incident: the August 2023 sale. Either the parties to the August 2023 sale formed a contract or they didn't. It's a binary choice. And the heart of plaintiff's Complaint is that defendants have prevented him from selling his land. So, the best way to construe plaintiff's tortious interference claim is one for business expectancy, not for tortious interference with a contract.

until the *Future Growth* case is resolved.  Doc. 19.  The Magistrate Judge denied plaintiff's

motion, explaining that under "Rule 42(b), a 'court may order a separate ***trial*** of one or more

separate issues, claims, crossclaims, counterclaims, or thirdparty claims.'"  Doc. 53 at 4

(emphasis in original).  So, plaintiff's erstwhile solution for solving his tortious interference

problem didn't pan out.

Given that plaintiff has decided his tortious interference claim is premature, and he's

asked the court to stay his tortious interference claim—a request our court denied—what's the

court to do with the tortious interference claim now?  Plaintiff asked the court to stay the tortious

interference claim because defendants Kite and Barngrover's conduct in the *Future Growth*

lawsuit represents the "intentional misconduct" element of his tortious interference claim.  That

is, plaintiff bases his tortious interference claim on defendants Kite and Barngrover's malicious

prosecution and abuse of process.  As already explained, it's too early to tell whether plaintiff

will prevail in that lawsuit.  The allegations in plaintiff's Complaint demonstrate this problem.

Plaintiff's Complaint alleges that defendants Kite and Barngrover sent copies of their

lawsuit to plaintiff's "realtors and title company to chill and intimidate them from completing the

real estate sale[.]"  Doc. 1 at 15.  Plaintiff's Complaint also alleges that Kite and Barngrover

"called and email[ed] to attorneys . . . and land Buyers under-contract to threaten them with

litigation if they were to proceed with the land sale, despite Defendants having no cause or claim

on the land being sold[.]"  *Id.*  These allegations represent the normal process of litigation.

Defendants' actions become "actionable where a party improperly interferes with a prospective

business advantage of a third person."  *Int'l Forest Prods. L.L.C. v. AAR Mfg., Inc.*, 618 F. Supp.

3d 1168, 1176 (D. Kan. 2022) (citing *Noller v. Gen. Motors Corp.*, 772 P.2d 271, 276 (Kan.

1989)).  This purportedly improper interference doesn't give rise to a plausible claim for tortious

interference without declaring routine litigation improper interference.  So, until the *Future Growth* lawsuit resolves in plaintiff's favor, he hasn't stated a plausible tortious interference claim.  Plaintiff himself has acknowledged as much.

Plaintiff's Complaint also alleges defendants Kite and Barngrover distributed plaintiff's email and tried to send him computer viruses, even though plaintiff asked them not to because of cybersecurity risks.  Doc. 1 at 15.  To state a claim for tortious interference, plaintiff must plausibly allege "damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct."  *Turner*, 722 P.2d at 1115.  Nowhere does plaintiff allege that a computer virus sent from defendants Kite and Barngrover prevented him from completing the August 2023 land sale.  Instead, plaintiff's Complaint blames the failed land sale on litigation threats.

In sum, plaintiff's tortious interference claim against defendants Kite and Barngrover fails to state a plausible claim, so the court grants defendants' motion against it.

### 8.        Unfair Competition

Construing plaintiff's Complaint liberally, the court also concludes that plaintiff asserts a claim against defendants Kite and Barngrover for unfair competition.  *See* Doc. 1 at 11 (alleging, in Claim 1 against Kite and Barngrover, that defendants' "improper conduct was to gain a business advantage by bad faith and unfair competition actions" and explaining this "court already has concluded that Kansas law recognizes a claim for 'unfair competition'" (emphases omitted)).

Defendants move for judgment against this claim, arguing that a "claim for unfair competition arises in the intellectual property context, which does not exist here."  Doc. 36 at 6. Plaintiff asserts that defendants committed the tort of unfair competition because they used "their businesses to claim harm upon themselves (when no harm and no rental contract existed)[.]" Doc. 38 at 8.  Plaintiff calls this unfair competition because "it sought to decrease Plaintiff's

property value, which it did by $500,000, and has blocked $1.75 million in blocked land sales[.]"
*Id.*

The problem with plaintiff's unfair competition claim is that he doesn't allege what defendants Kite and Barngrover did that, if true, would qualify as unfair competition. Plaintiff's Complaint asserts—in Claim 1 against Kite and Barngrover—that these defendants gained a business advantage through unfair competition and emphasized that Kansas law recognizes a claim for unfair competition. Doc. 1 at 11. Plaintiff later alleges that these defendants called and sent emails to potential land buyers to threaten them with litigation. *Id.* at 15. That's it. And plaintiff's response mentions defendants' businesses, but that doesn't have anything to do with defendants Kite and Barngrover. Nowhere does plaintiff assert that defendants Kite and Barngrover have businesses. Plaintiff thus fails to plead sufficient facts capable of supporting a reasonable inference that defendants Kite and Barngrover engaged in unfair competition.

Again, plaintiff has alleged that these defendants merely engaged in litigation. And that litigation is ongoing. Plaintiff's Complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). As explained below, plaintiff's belief about unfair competition implicates just one person—defendant John Holman. The court thus grants the motion for this claim against defendants Kite and Barngrover.

### 9. Fraud

The court also construes plaintiff's "Claim 1" to bring a claim for fraud against defendants Kite and Barngrover. *See* Doc. 1 at 10 (stating, within Claim 1 against Kite and Barngrover, that *Future Growth* lawsuit involves "frauds upon the Court"). Defendants ask the court for judgment against this claim. Doc. 36 at 11. They argue that plaintiff's Complaint fails to plead fraud with particularity, as required by Fed. R. Civ. P. 9.

17

Fed. R. Civ. P. 9 governs "pleading special matters" in cases alleging fraud, like this one. Fed. R. Civ. P. 9. For fraud allegations, "a party must state with *particularity* the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b) (emphasis added). In other words, Rule 9(b) imposes a "heightened pleading standard" for fraud claims. *Welch v. Centex Home Equity, Co.*, 323 F. Supp. 2d 1087, 1094 (D. Kan. 2004) (citations omitted). As our Circuit has explained, the Supreme Court's seminal rulings in *Twombly* and *Iqbal* didn't alter Rule 9's primary focus—that is, "'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based[.]'" *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). Plaintiff's fraud claim fails this particularity standard.

To be sure, the Complaint uses the word "fraud" a great deal. For example, in Claim 1 against defendants Kite and Barngrover, plaintiff alleges that defendants' *Future Growth* lawsuit was fraud upon the court. Doc. 1 at 10. And, within Claim 1, plaintiff alleges "[t]hey maliciously filed their lawsuit and mis-stated the transfer date . . . to falsely allege a fraudulent transfer and effect conversion through clouding of title[.]" *Id.* at 11. Curse the third-person plural pronoun in that sentence—it's not clear who "they" references. These allegations don't provide Kite and Barngrover with requisite notice of plaintiff's fraud claim against them. And these allegations certainly don't allege a "factual ground" upon which plaintiff bases his fraud claims. Defendants thus are correct. Plaintiff has failed to plead particular facts supporting the elements of fraud, so the court grants defendants' motion on the fraud claim as applied to defendants Kite and Barngrover. This ends the court's analysis of plaintiff's claims against Kite and Barngrover.

In sum, the court construes plaintiff's "Claim 1" against defendants Kite and Barngrover to assert nine claims against these defendants. All nine fail to state a claim. The court thus grants defendants' motion against all nine claims asserted against defendants Kite and Barngrover.

## B.   Claims against defendants John Holman, Marcella Warner Holman, and their businesses.

The court construes plaintiff's Complaint to bring the following claims against defendants John Holman, Marcella Warner Holman, and their businesses: tortious interference, defamation, unfair competition, intentional infliction of emotional distress, malicious prosecution, conversion, a violation of Kan. Stat. Ann. § 58-2555(f), breach of oral contract, and breach of contract.[10] The court considers whether plaintiff has stated a viable claim on each claim, below.

---

[10]   The court pauses here to explain how it interprets plaintiff's Complaint against the Holmans and their businesses. As the court explained at the outset, plaintiff brings Claims 2–9 against all defendants. Doc. 1 at 13. And plaintiff brings Claims 11–15 against defendants John Holman, Marcella Warner Holman, and their businesses. *Id.* at 17. The court explains how it decided these 14 claims asserted, in reality, nine claims, below, keeping count of the nine claims in parentheses.

Claim 2 asserts a tortious interference claim (1). *Id.* at 14. Claim 3 mentions tortious interference, defamation (2), and unfair competition (3). *Id.*

In a confusing mashup, plaintiff brings Claim 4, Claim 5, and Claim 6 against defendants Kite and Barngrover only. *Id.* at 15. Claim 4 alleges defendants Kite and Barngrover sent copies of the *Future Growth* lawsuit to plaintiff's realtors and title company to chill and intimidate them. Claim 5 alleges defendants Kite and Barngrover made calls and sent emails that threatened plaintiff and any potential land buyers with litigation, committing unfair competition and tortious interference. *Id.* Claim 6 alleges defendants Kite and Barngrover distributed plaintiff's email address and sent him computer viruses. *Id.* The court just finished explaining why these claims against Kite and Barngrover fail, so it doesn't address them again.

Claim 7 alleges plaintiff incurred damage to his reputation from defendants' statements to third parties, so the court considers this part of plaintiff's defamation claim asserted above, in Claim 3. *Id.* Claim 8 again mentions wrongful means, so the court considers this part of plaintiff's tortious interference claim asserted in Claim 2. *Id.* at 15–16. Claim 9 mentions intentional infliction of emotional distress (4), malicious prosecution (5), and conversion (6). *Id.* at 16. The court already explained these theories as applied to defendants Kite and Barngrover, and now, in this section, addresses these claims as they apply to the Holmans and their businesses.

### 1.      Tortious Interference

Plaintiff asserts a tortious interference claim against defendants John Holman, Marcella Warner Holman, and their businesses.  Doc. 1 at 14.  Plaintiff's tortious interference claim alleges a wide variety of wrongful conduct:  John Holman threatened third parties, defendants interfering with third parties to make plaintiff's real estate land deal unworkable, and defendants filed the *Future Growth* lawsuit.  But, just like plaintiff's tortious interference claim against defendants Kite and Barngrover, plaintiff's response to defendants' motion asserts that he filed a motion to bifurcate and stay this tortious interference claim.  Doc. 38 at 6.

As already explained, the court interprets this request to mean that plaintiff bases his tortious interference claim on defendants' conduct in the *Future Growth* lawsuit.  And plaintiff seemingly acknowledges that defendants' conduct can't plausibly qualify as intentional misconduct until that lawsuit resolves itself in plaintiff's favor.  Plaintiff's only response to defendants' motion against his tortious interference claim is to insist that he's solved this problem by asking for bifurcation and a stay until the *Future Growth* lawsuit ends.  The court thus considers plaintiff's tortious interference claim based on all other conduct by defendants John Holman, Marcella Warner Holman, and their businesses abandoned.  *See Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming district court's judgment against plaintiff's § 1983 equal protection claim after it concluded that plaintiff had abandoned the claim because he had not addressed it in his memorandum opposing summary judgment); *see*

---

Plaintiff brings Claims 10–15 "solely against the Defendants Holmans and their related businesses." *Id.* at 17.  Claim 10 asserts these defendants violated Kan. Stat. Ann. § 58-2555(f)(7). *Id.* Claim 11 brings a breach of verbal contract claim (8). *Id.*  Claim 12 alleges breach of contract (9). *Id.* Claim 13 alleges defendants improperly removed cattle from the pasture, which, to be direct, the court can't fit under any recognized theory of tort. *Id.* at 18.  Claim 14 similarly is difficult to understand.  It provides:  "Assigned collection for James Linlor to receive of 90% of FSA payments claimed by Defendants in this claim to have received, which they verbally agreed to pay to Future Growth LLC[.]" *Id.* at 18.  The court construes this as another breach of verbal contract claim.  And, finally, Claim 15 doesn't assert a claim at all. *Id.* at 19.  Rather, it identifies the consequential damages plaintiff claims. *Id.*

*also C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1337 (D. Kan. 2008) (concluding that plaintiff had abandoned his retaliation claim by not responding to defendant's motion for summary judgment against the claim); *McRoberts v. Rosas*, No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *12 (D. Kan. Sept. 27, 2022) (concluding plaintiff had abandoned state law tort claims by failing to respond to defendants' dismissal arguments).

The court thus grants defendants' motion for judgment on this claim against the Holmans and their businesses, too. *See above* § III.A.7.

## 2.    Defamation

Plaintiff's claim against the Holmans and their businesses for defamation suffers from the same problem as his defamation claim against defendants Kite and Barngrover:  improperly pleaded reputational damages. *See above* § III.A.4.  Plaintiff's Complaint merely mentions that defendants' actions have damaged his reputation—and it only mentions reputation twice.  Doc. 1 at 15, 16.  These "generic allegations of reputation injury are insufficient to meet the requirement of" Rule 9(g), so the court grants the motion against plaintiff's defamation claim, asserted against the Holmans and their businesses.  *Garcia*, 890 F. Supp. 2d at 1271.

## 3.    Unfair Competition

Plaintiff asserts unfair competition claims against the Holmans (and their businesses) as well.  Plaintiff's Complaint alleges that these defendants "made false and defamatory statements as part of unfair competition[.]"  Doc. 1 at 14.  Plaintiff's Complaint goes on to allege:

- "John Holman called to Plaintiff's neighbor and threatened that the neighbor 'had better not do business with Plaintiff' and that the neighbor 'would be harmed' (manner unspecified) if the neighbor did business with Plaintiff."  *Id.*

- "John Holman called to one of Plaintiff's realtors and claimed that Holman would not allow the real estate auction for Plaintiff's land to complete and that the Realtor 'had better not proceed with the land auction' scheduled for 2 days later[.]"  *Id.*

So, it appears that plaintiff's unfair competition dispute is with just one defendant, John Holman. The court thus grants defendants Marcella Warner Holman, Black Diamond Angus Ranch Partnership, Black Diamond Angus Ranch LLC, and Warner Angus Ranch Morgans' motion on this claim.[11]  Narrowed to just defendant John Holman, the court begins its analysis by explaining what, exactly, an unfair competition claim is.

Our court already has concluded that Kansas law recognizes a claim for unfair competition. *AgJunction LLC v. Agrian Inc.*, No. 14-CV-2069-DDC-KGS, 2014 WL 2557704, at *7 (D. Kan. June 6, 2014) (citing *Airport Sys. Int'l, Inc. v. Airsys ATM, Inc.*, 144 F. Supp. 2d 1268, 1271 (D. Kan. 2001)); *see also Airport Sys.*, 144 F. Supp. 2d at 1270–72 (interpreting Kansas case law and Restatement (Third) of Unfair Competition).  It also has predicted Kansas would adopt the Restatement (Third) of Unfair Competition for this tort. *See Airport Sys.*, 144 F. Supp. 2d at 1270.  And this court has recognized that:

> Unfair competition . . . does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by the courts.  The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values.

*AgJunction*, 2014 WL 2557704, at *7 (quoting *Airport Sys.*, 144 F. Supp. 2d at 1271).

Defendants ask for judgment on the pleadings against this claim because, they assert, unfair competition solely arises in the intellectual property context.  Doc. 36 at 6.  Plaintiff responds by citing the above authority and its comments on the breadth of an unfair competition claim.  Plaintiff is correct.  Unfair competition is broader than defendants imagine.

---

[11]    Plaintiff's response to the Motion for Judgment on the Pleadings asserts that he has dealt with the Holmans' businesses, rather than the Holmans "in their individual capacities."  Doc. 38 at 7.  But the court construes this response to assert that plaintiff dealt with the Holmans' businesses when renting pasture to them, not when selling the land.  And this unfair competition claim arises from the land sale. So, in the court's view, the Holmans' businesses properly are removed from this unfair competition claim.

Under the Restatement (Third) of Unfair Competition, common law "unfair competition bars particular methods of competing, specifically:  (i) deceptive marketing or false advertising; (ii) trademark infringement; (iii) misappropriation of the trade values of another; or (iv) conduct otherwise 'determined to be actionable as an unfair method of competition.'" *Warner Bros. Ent. Inc. v. Loyd*, No. CIV 20-0062 JB/JFR, 2023 WL 5727468, at *72 (D.N.M. Sept. 5, 2023) (quoting Restatement (Third) of Unfair Competition § 1 & cmt. a (Am. L. Inst. 1995)); *see also CST Indus., Inc. v. Tank Connection, L.L.C.*, No. 23-2339-JAR-RES, 2024 WL 3360420, at *5 (D. Kan. July 9, 2024) (providing same three categories for unfair competition claim under Kansas law).  Plaintiff doesn't allege any conduct falling within the first three buckets of unfair competition.  That leaves the fourth bucket—the residual clause in the Restatement.

The Restatement's residual clause seems broad, but "it is not without boundaries."  *CST Indus.*, 2024 WL 3360420, at *6.  The Restatement provides guidance for courts applying this residual clause:

> It is impossible to state a definitive test for determining which methods of competition will be deemed unfair in addition to those included in the categories of conduct described in the preceding Comments.  Courts continue to evaluate competitive practices against generalized standards of fairness and social utility.  Judicial formulations have broadly appealed to principles of honesty and fair dealing, rules of fair play and good conscience, and the morality of the marketplace.  The case law, however, is far more circumscribed than such rhetoric might indicate, and courts have generally been reluctant to interfere in the competitive process.  An act or practice is likely to be judged unfair only if it substantially interferes with the ability of others to compete on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law.
>
> As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.  A competitor who interferes with the business of another by acts or threats of violence directed at the other, for example, is subject to liability for unfair competition.  So also is one who interferes by instituting or threatening to institute groundless litigation against a competitor.

Restatement (Third) of Unfair Competition § 1 cmt. g.

The court concludes that plaintiff states a claim for unfair competition against defendant John Holman for "interfere[nce] with the business of another by acts or threats of violence directed at the other[.]" *Id.* Plaintiff's Complaint alleges that defendant John Holman called plaintiff's neighbor and threatened the neighbor not to do business with plaintiff "and that the neighbor 'would be harmed' (manner unspecified) if the neighbor did business with Plaintiff." Doc. 1 at 14. Liberally construing plaintiff's Complaint, this threat is enough to survive the current motion.[12]

In sum, unfair competition isn't as narrow as defendants contend. And plaintiff has stated a claim for unfair competition against defendant John Holman.

### 4.   Intentional Infliction of Emotional Distress

First, a brief refresher. An intentional infliction of emotional distress claim under Kansas law has four elements: "(1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe." *Valadez*, 229 P.3d at 394. With defendants Kite and Barngrover, the decisive issue was the second element: extreme and outrageous conduct. Plaintiff's claim against the Holman defendants (and their businesses) encounters the same shortcoming.

---

[12]   The court emphasizes the factual basis of plaintiff's unfair competition claim. The alleged threats—alone—suffice to state a claim. But not the *Future Growth* lawsuit. As mentioned, when discussing the claims against defendants Kite and Barngrover, plaintiff hasn't cited any authority suggesting that merely litigating gives rise to unfair competition liability. To be sure, the Restatement's comment to the residual clause explains that instituting *groundless* litigation can give rise to unfair competition liability. Restatement (Third) of Unfair Competition § 1 cmt. g. Because the *Future Growth* lawsuit is ongoing, plaintiff appears to have chosen to direct his unfair competition claim at defendant John Holman's threats. To the extent one could construe the Complaint to allege that the *Future Growth* lawsuit is groundless, that's a legal conclusion that the court need not accept as fact. *Iqbal*, 556 U.S. at 678.

Here, plaintiff alleges defendants'

> conduct was both 'extreme and outrageous' through attorney filings of false prosecution, knowing filing of false documents . . . , fraudulent . . . claims of a lease, and false claims of fraudulent transfer for an unrelated land sale, and then threats by . . . [J]ohn [H]olman against multiple 3rd parties and threatening the 3rd parties with litigation if they completed the real estate sales already under contract[.]

Doc. 1 at 16–17.  Again, plaintiff's claim relies only on actions by defendant John Holman.  He hasn't stated a viable claim against defendants Marcella Warner Holman or the Holman businesses.  The remaining question, then, is whether plaintiff has stated a plausible claim for intentional infliction of emotional distress against defendant John Holman.

"'The classic test is that liability may be found to exist when the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, "Outrageous!"'"  *Mai v. Williams Indus., Inc.*, 899 F. Supp. 536, 542 (D. Kan. 1995) (quoting *Fusaro v. First Family Mortg. Corp.*, 897 P.2d 123, 131 (Kan. 1995)).  The Kansas Supreme Court has emphasized that "liability does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities" because members "of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind."  *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981).

Here, plaintiff's Complaint alleges defendant John Holman did two things:  made threats and filed the *Future Growth* action.  Doc. 1 at 16–17.  And that's the problem.  Kansas law couldn't be any clearer.  Mere threats can't give rise to liability for intentional infliction of emotional distress.  *Roberts*, 637 P.2d at 1179.  And the *Future Growth* litigation is still ongoing. The court won't know if the *Future Growth* action qualifies as "false prosecution" or if defendants have filed "false documents" until that case ends.  Until then, plaintiff fails to state a

plausible claim for intentional infliction of emotional distress against Mr. Holman.  The simple act of filing and litigating a lawsuit doesn't qualify as outrageous.  And so plaintiff hasn't alleged that defendant John Holman has taken any action that plausibly could lead an average "'citizen to spontaneously exclaim, "Outrageous!"'" *Mai*, 899 F. Supp. at 542 (quoting *Fusaro*, 897 P.2d at 131).  The court thus grants defendants' motion against plaintiff's intentional infliction of emotional distress claim.

### 5.    Malicious Prosecution

To state a plausible malicious prosecution claim against defendants John Holman, Marcella Warner Holman, or their businesses plaintiff must allege that "the proceeding terminated in favor of the plaintiff."  *Budd*, 491 P.3d at 1281 (quotation cleaned up).  As already explained, plaintiff hasn't done that because the *Future Growth* lawsuit remains ongoing.  *See above* § III.A.1.  Plaintiff thus fails to state a plausible malicious prosecution claim against the remaining defendants.  So, the court grants defendants' motion against this claim.

That decision leaves four more claims.

### 6.    Conversion

Recall that plaintiff's real property conversion claim against defendants Kite and Barngrover succumbed quickly to legal reality.  *See above* § III.A.5.  Plaintiff's Complaint makes it clear that he bases his conversion claim on his real property.  For example, the Complaint alleges "conversion . . . from blocking of Plaintiff's sale of pasture real estate land located in Ford County, Kansas."  Doc. 1 at 2.  It further alleges that he "has been effectively 'held hostage' due to conversion . . . blocking his land sale for over a full year[.]"  *Id.* at 3.  But the tort of conversion concerns itself with goods and personal chattels—not real property.  *Alexander*, 2016 WL 5243412, at *5 (citing *Bomhoff*, 109 P.3d at 1246).  And, though plaintiff throws in some conclusory rhetoric that defendants stole his personal property in his response

brief, Doc. 38 at 9, that language is no more than a "formulaic recitation of the elements of a cause of action," which "will not do[,]" *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  The court thus grants defendants' motion against plaintiff's conversion claim.

### 7.     Kan. Stat. Ann. § 58-2555(f)

Next, plaintiff makes a claim against defendants John Holman, Marcella Warner Holman, and their businesses for violating Kan. Stat. Ann. § 58-2555(f).  Doc. 1 at 17.  This statute provides that a "tenant shall . . . be responsible for any destruction, defacement, damage, impairment or removal of any part of the premises caused by an act or omission of the tenant[.]"  Kan. Stat. Ann. § 58-2555(f).  This statute, part of the Kansas Residential Landlord and Tenant Act, explains the duties of a tenant.  *See State Farm Fire & Cas. Co. v. Denson*, 379 P.3d 425, 2016 WL 4413628, at *6 (Kan. Ct. App. 2016).

Plaintiff alleges defendants damaged "existing infrastructure . . . through breaking of pipes[.]"  Doc. 1 at 17.  Defendants seek judgment against this claim because plaintiff "fails to identify whether he or another party is the landlord" and "fails to identify who, if any, of the named Defendants were tenants."  Doc. 36 at 12.  Defendants also point out that plaintiff "fails to identify who, if any, of the named Defendants damaged his property."  *Id.*  Without a clearly alleged landlord-tenant relationship, defendants argue, plaintiff can't state a claim under Kan. Stat. Ann. § 58-2555(f).  *Id.*  In sum, defendants thus assert this claim fails because plaintiff has failed to identify the real parties in interest.  *Id.*

Plaintiff responds that he "listed the real parties in interest on pages 17 and 18" of his Complaint.  Doc. 38 at 10.  A close review of pages 17 and 18 clarifies his point.  There, plaintiff asserts he served as landlord because, his Complaint alleges, "[c]ollection of . . . rent was assigned to James Linlor, individually."  Doc. 1 at 17.  And plaintiff brings this claim against defendants John Holman, Marcella Warner Holman, Black Diamond Angus Ranch Partnership,

Black Diamond Angus Ranch LLC, and Warner Angus Ranch Morgans. *Id.* Given that these entities allegedly rented the land, it's plausible to infer that they damaged plaintiff's property. Liberally construing plaintiff's pro se Complaint, the court concludes that plaintiff has alleged the landlord-tenant relationship with sufficient clarity.

Defendants' argument that plaintiff has failed to identify the real parties in interest is peculiar. Under Kansas law, the party in interest is "the party who, by the substantive law, has the right sought to be enforced." *Torkelson v. Bank of Horton*, 491 P.2d 954, 957 (Kan. 1971) (citation and internal quotation marks omitted). Generally, the real-party-in-interest defense emerges when a defendant objects to a plaintiff's status as the real party in interest. *See* 6A Mary Kay Kane, *Federal Practice and Procedure* § 1554 (3d ed. 2024). And, usually, the courts treat the objection "as something in the nature of an affirmative defense under Rule 8(c)." *Id.* So, usually, the burden is on the defendant to show that plaintiff isn't the real party in interest. *See Lexington Ins. Co. v. W. Roofing Co.*, No. 03-2036-JWL, 2003 WL 22205614, at *1 (D. Kan. Sept. 23, 2003) (denying defendant's motion to dismiss where defendants had argued that plaintiff insurance company wasn't real party in interest because plaintiff had "set forth sufficient facts demonstrating that the property owner was one of its insureds" and so defendant had failed to carry dismissal burden).

Here, defendants haven't carried this burden because they don't treat this issue like an affirmative defense. If defendants conclude plaintiff doesn't have a right to bring this lawsuit, then *defendants* bear the burden to show as much. *Id.* To the extent defendants argue that plaintiff doesn't specify the proper defendants who are the real parties in interest—defendants' argument is vague on this point—the court rejects that argument, too. As already mentioned, plaintiff's Complaint alleges enough facts for the court to conclude that the Holmans and their

businesses are the parties who rented the land.  Defendants haven't adduced any judicially noticeable evidence that plaintiff has sued the wrong defendants.

As just stated, the court liberally construes plaintiff's Complaint to assert that plaintiff's the landlord and the tenants are defendants John Holman, Marcella Warner Holman, Black Diamond Angus Ranch Partnership, Black Diamond Angus Ranch LLC, and Warner Angus Ranch Morgans.  It's plausible to infer that these tenants damaged plaintiff's pipes, as alleged in the Complaint.  Plaintiff thus states a viable claim under Kan. Stat. Ann. § 58-2555(f), so the court denies defendants' motion against this claim.

### 8.      Breach of Oral Contract

Plaintiff also asserts that defendants John Holman, Marcella Warner Holman, and their businesses have breached an oral contract.  Doc. 1 at 17.  Plaintiff's Complaint alleges:  "Breach of verbal contract to pay consideration for Defendants' claim of pasture rental and tenancy being due in the amount of $990,000 due by 12/1/23."  *Id.*  The court construes this as a breach of oral contract claim.  In Kansas, the elements of a breach of contract claim are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).  Defendants make three arguments for dismissal of this claim.  The court rejects all three.

*First*, defendants argue that this claim fails because plaintiff doesn't identify the parties to the contract.  The court disagrees.  Plaintiff brings this claim against the Holmans and their businesses.  Liberally construed, plaintiff alleges that he had an agreement with these defendants to rent plaintiff's pasture.  The Complaint alleges the parties to the contract with sufficient clarity at this stage in the case.

*Second*, defendants argue that plaintiff "fails to identify any of the elements to support a contract, including the require[d] elements of offer and acceptance." Doc. 36 at 8. The elements of offer and acceptance address the formation of a contract. *Shane v. Log Star Homes of Am., Inc.*, No. 6:14-CV-01273-JTM, 2016 WL 7242517, at *7 (D. Kan. Dec. 15, 2016) (applying Kansas law) ("Three elements create a contract: offer, acceptance and consideration." (quotation cleaned up)). "Whether a contract has been formed depends on the intent of the parties and is a question of fact." *Lindsey Masonry Co. v. Murray & Sons Constr. Co.*, 390 P.3d 56, 61 (Kan. Ct. App. 2017). And resolution of factual questions is inappropriate at the motion to dismiss stage. *See Cohen v. Battaglia*, 293 P.3d 752, 756 (Kan. 2013); *Seaboard Corp. v. Marsh Inc.*, 284 P.3d 314, 320 (Kan. 2012) ("[F]actual disputes cannot be resolved in ruling on a motion to dismiss[.]").

*Last*, defendants argue that plaintiff "fails to identify how this verbal contract was breached." Doc. 36 at 8. But the court doesn't have any trouble identifying the alleged breach. Liberally construed, plaintiff alleges that he had an oral contract with the Holmans and their businesses for $990,000 for rental of his pasture, and defendants didn't pay.

In sum, the court rejects defendants' argument that plaintiff hasn't alleged "*who* breached *what* contract and *how* the contract was breached." Doc. 41 at 3–4 (emphases supplied). Liberally construed, plaintiff's Complaint alleges that the Holmans and their businesses breached a verbal contract for renting plaintiff's pasture by not paying the money owed. And that's enough to state a claim at the pleading stage. This claim thus survives defendants' motion.

### 9.     Breach of Contract[13]

---

[13]     Plaintiff's Complaint notes that he is pleading "a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith." Doc. 1 at 17.

Plaintiff's breach of contract claim centers around two contracts: "sales contracts of 8/8/22 and 3/3/23[.]" Doc. 1 at 17. Defendants assert that plaintiff wasn't a party to those contracts. Doc. 36 at 8–9. And they attached the sales contract that, they assert, plaintiff's Complaint referenced.[14] *See* Doc. 36-1. Here's the relevant part of the sales contract:

### KANSAS REAL ESTATE PURCHASE AGREEMENT



**THIS REAL ESTATE PURCHASE AGREEMENT** hereinafter known as the **"Agreement"** is entered into this 17th day of February 2023, ("**Effective Date**") by and between

**Future Growth LLC, c/o James Linlor** with mailing address at
PO Box 1812, Zephyr Cove, NV 89448 fax 206-339-9072
hereinafter referred to as the **"Seller,"**

And

Marcella Warner Holman ≥ Johnathan Holman _____ with mailing address at 10072 120 Rd, Spearville Ks
_____ hereinafter referred to as the "**Buyer,**" 67876

Doc. 36-1 at 1.

---

[14]    The court must address three things about this attached contract. *One*, plaintiff argues that defendants, by attaching the contract, filed an improper sur-reply. Doc. 38 at 1. It's not a sur-reply. A sur-reply responds to arguments made by the moving party in a reply. *Two*, plaintiff complains that this document is an "additional contract" that defendants want to "replace the exhibit in Dkt 7, despite NOT having Leave to Amend their defective complaint[.]" *Id.* at 3. It appears that plaintiff's talking about the *Future Growth* case. Defendants explain that they erroneously filed the wrong contract in that case. Doc. 36 at 3. Plaintiff clearly is upset about this, but, to be blunt, his dissatisfaction has nothing to do with the claims or issues in this case. *Last*, defendants ask the court to consider this document at the pleadings stage, which begs the question: Can the court consider the contract at the pleading stage? Although plaintiff didn't attach this contract to his Complaint, the court may consider it because plaintiff references the contract in the Complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). Plaintiff complains that the contract filed in the *Future Growth* case is fraudulent, but not the exhibit attached to defendants' Motion for Judgment on the Pleadings. *See* Doc. 38 at 3. So, plaintiff doesn't dispute the contract's authenticity, and the court properly can consider the document on this Motion for Judgment on the Pleadings.

So, "Future Growth LLC"—one of plaintiff's businesses—is the party to the contract. Plaintiff argues "that the signature of Plaintiff at the end of the agreement lists 'James Linlor', not a business or other party, making James Linlor a party to the contract." Doc. 38 at 9. And plaintiff points out that if "completed, Plaintiff would have had to report any income onto his personal income taxes." *Id.* Plaintiff cites no authority for his view that signing an agreement on behalf of an LLC makes the signing individual a party to the contract. The absence of such authority shouldn't surprise anyone for in "Kansas, a LLC—similar to a corporation—is a separate legal entity[.]" *Green v. Blake*, 406 F. Supp. 3d 984, 996 (D. Kan. 2019) (quotation cleaned up). Nor does plaintiff have any legal authority for his view that his personal tax liability dissolves the corporate veil.

Defendants are correct. Plaintiff doesn't have privity of contract with defendants. "Privity of contract is that connection or relationship which exists between two or more contracting parties. It is essential to the maintenance of an action on any contract that there should subsist a privity between the plaintiff and defendant in respect of the matter sued on." *Pro. Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 891 (Kan. 1984) (citation and internal quotation marks omitted). Because plaintiff isn't a party to the contract, plaintiff can't state a plausible claim for breach of that contract. The court thus grants defendants' motion against this claim.[15]

This ruling concludes the court's analysis of plaintiff's claims. The analysis started with 18 claims. Three remain: plaintiff's unfair competition claim against John Holman; and his claim against the Holmans (and their businesses) for violating Kansas's landlord-tenant statute;

---

[15]     One last observation about plaintiff's claims: plaintiff's response to defendants' motion throws in the term "RICO." Doc. 38 at 10. Plaintiff asserts that because "defendants own several businesses and damages they have caused to Plaintiff are for the benefit of their businesses, this is also a class racketeering (RICO) extortion case." *Id.* The court declines to construe this passing and confusing reference to RICO as sufficient to assert a RICO claim. And, most importantly, it's not in the Complaint.

and plaintiff's claim against the Holmans and their businesses for breach of oral contract.  With

the merits resolved, the court moves to plaintiff's request for sanctions.

### C.     Sanctions

In his response to defendants' motion, plaintiff seeks sanctions.  He bases his request for

sanctions on an event that avid footnote readers already know about:  defendants attached the

wrong contract to their filings in the *Future Growth* case.  Defendants respond it was a simple

mistake.  Doc. 36 at 3.  Plaintiff calls it a "fraud[] upon the Court."  Doc. 38 at 3.  The court

credits defendants' explanation.  And it reminds plaintiff that he needs to litigate issues in the

*Future Growth* case in the *Future Growth* case—not here.

Somewhat relatedly, plaintiff has filed a "Motion for Partial Summary Judgment" (Doc.

21).  This filing doesn't seek summary judgment under Fed. R. Civ. P. 56.  Instead, it's better

characterized as a motion for sanctions.  Plaintiff asks the court to enter judgment in his favor

based on what plaintiff calls fraud, forged documents, and false filings.  Specifically, plaintiff

takes issue with the defendants in this case attaching the *Future Growth* petition (Doc. 7-2) to

their Motion to Consolidate (Doc. 7).  And plaintiff argues he's entitled to summary judgment

because defendants have blocked his land sale.  Doc. 39 at 1.  The court, after reviewing all of

plaintiff's filings, finds most of plaintiff's argument irrelevant.  The court briefly outlines

defendants' explanations about the events forming the basis of plaintiff's motion, below.

Defendants have provided an affidavit from defendant Kite asserting that they've fixed

the improper contract issue in the *Future Growth* case.  Doc. 37-1 at 1–2 (Kite Aff. ¶¶ 4–8).  The

affidavit also explains that the error was an innocent mistake.  *Id.*  To the extent this dust-up

matters to this case—and the court's not convinced it does—the court accepts defendants'

explanation and considers the issue closed.  No one should take this conclusion to express any

conclusion about the *Future Growth* case.  The court leaves the disputes emanating from that case to the judge assigned to it.

Defendants also point out that, for all of plaintiff's bluster, he hasn't shown how, exactly, defendants forged documents.  And defendants proffer the affidavit of defendant John Holman, who explains that he didn't forge anyone's signature on the relevant documents.  Doc. 37-2 at 1 (Holman Aff. ¶¶ 3–7).  The court accepts this explanation, too.  Plaintiff spills much ink complaining about defendants forging FSA documents.  But this dispute doesn't have anything to do with defendants' conduct in this litigation.  The court won't sanction defendants on this basis.

Defendants correctly argue that plaintiff isn't entitled to judgment simply because defendants have blocked his land sale.  That is the crux of the legal issues in the *Future Growth* case and this case.  Defendants are entitled to present their case, and plaintiff is entitled to present his.  The court understands that the litigation process can consume time, but that doesn't mean plaintiff is entitled to a shortcut to get what he wants.  The court thus declines to award plaintiff the sanctions he seeks in his "Motion for Partial Summary Judgment" (Doc. 21).  The court denies that motion.

But plaintiff's decision to file his "Motion for Partial Summary Judgment" borders on frivolous.  The court will not tolerate any future frivolous filings.  And the court encourages plaintiff to focus on litigating his case on its merits.  Flinging the words "fraud" and "forgery" around don't help resolve the disputes at issue here.

## IV.     Motion to Quiet Title, Enjoin Defendants (Doc. 20)

Plaintiff has filed another motion, which he titles an "Emergency Motion to Quiet Title, Enjoin Defendants to Interference in the sale of property and Order Compelling defendants to pay deposit to Court as movants under quasi FRCP 65 and adjudication per 28 U.S. Code §

2361" (Doc. 20).  In it, plaintiff asserts "it is now ripe for Plaintiff's land title to be quieted[.]"
Doc. 20 at 1.  And he alleges that the *Future Growth* action has "effected a defacto injunction"
similar to Fed. R. Civ. P. 65 that has prevented plaintiff from selling his pasture.  *Id.*  The court
takes up the Fed. R. Civ. P. 65 issue first.

This is a backdoor attempt to get relief in the *Future Growth* case.  Defendants haven't
requested an injunction or temporary restraining order.  And so, they don't need to comply with
Fed. R. Civ. P. 65.  The court thus denies this part of the motion and, again, warns plaintiff about
frivolous filings.

Plaintiff's motion also asks the court presiding over this case to quiet title to his land.
But, as defendants point out and plaintiff concedes, it's not his land.  The land is owned by Stuga
LLC.  Doc. 20 at 6; Doc. 29 at 4.  So, plaintiff has a real-party-in-interest problem.  *See above*
§ III.B.7.  And, in any event, defendants are correct:  plaintiff can't secure a quiet title in this
case because he hasn't pleaded a claim that could support such relief.  The court thus denies this
request, too.

## V.        Conclusion

All of plaintiff's claims against defendants Kite and Barngrover fail, and so the court
dismisses these defendants from this action.  *See above* § III.A.  Plaintiff's claim for unfair
competition against defendant John Holman survives.  *See above* § III.B.3.  Plaintiff's claim
against defendants John Holman and Marcella Warner Holman (and their businesses) for
violating Kan. Stat. Ann. § 28-2555(f) also survives.  *See above* § III.B.7.  And plaintiff's claim
for breach of oral contract against the Holmans (and their businesses) survives.  The rest of
plaintiff's claims against the Holmans and their businesses fail.

The court dismisses these claims without prejudice.  This might seem like an unusual
result, given that defendants move for *judgment* on the pleadings.  And to be sure, courts usually

dismiss claims under Rule 12(c) with prejudice. *See Woodie v. Berkshire Hathaway Homestate Ins.*, 806 F. App'x 658, 663, 673 (10th Cir. 2020) (affirming district court's granting of motion for judgment on the pleadings and affirming Rule 12(c) dismissal of plaintiff's claims "with prejudice"); *see also Peña v. Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015) ("Claims dismissed pursuant to a motion under rule 12(c) are dismissed with prejudice." (citation omitted)). "That is not to say, however, that claims dismissed under Rule 12(c) *must* be dismissed with prejudice." *Escano v. Concord Auto Protect, Inc.*, No. 21-223 MV/CG, 2022 WL 621001, at *5 (D.N.M. Mar. 3, 2022) (emphasis in original). And so, when "'granting Rule 12(c) motions, courts may give leave to amend and may dismiss causes of action rather than grant judgment.'" *Escano*, 2022 WL 621001, at *5 (quoting *Cheromiah v. United States*, 55 F. Supp. 2d 1295, 1298 (D.N.M. 1999)). The court chooses the latter course here: dismissal without prejudice.

The court does so for two reasons. *One*, plaintiff proceeds pro se. Our Circuit has urged courts to dismiss pro se claims without prejudice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). *Two*, many of plaintiff's claims simply haven't ripened yet. Perhaps they'll never ripen—the *Future Growth* case is ongoing. So, while plaintiff can't state some claims now, perhaps he can at some future point.

The court also denies plaintiff's two pending motions (Doc. 20; Doc. 21). And it warns plaintiff that the court will not tolerate frivolous, vexatious litigation.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings or to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (Doc. 35) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiff's Emergency Motion to Quiet Title

(Doc. 20) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Partial Summary Judgment

(Doc. 21) is denied.

**IT IS SO ORDERED.**

Dated this 13th day of August, 2024, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge